### Joseph Hale v. Abram Huntley and Nehemiah Pray.

Where the owner of coal pits, which were in process of burning, sold the charcoal, which might be taken therefrom, at a specified price for each one hundred bushels, and agreed that he would complete the burning and draw the coal to the vendee's place of business, and the vendor accordingly continued to have charge of the coal until it was attached by his creditors, before it had been measured and delivered to the vendee, it was held, that the vendee acquired, by the contract, no property in the coal, even as between himself and the vendor.

Where charcoal in the pit was attached, a part of which was entirely completed, so as not to require any farther attention, or labor, and the residue of which had so far progressed in the process of manufacture as to have been entirely burned to coal, although some labor and skill were still necessary, in order to separate and preserve it properly, it was held, that if a sheriff, holding a writ of attachment against the owner, saw fit to attach and take possession of the coal and run the risk of being able to keep it properly, he had the right to do so.

And it was also held, that if any portion of the coal so attached were consumed through the want of proper care and attention on the part of the officer, the plaintiff could not sustain trespass against the officer, to recover for such non-feasance, and that the attaching creditor was not liable therefor, unless the omission were by his command, or assent.

The case of *Wilds* v. *Blanchard*, 7 Vt. 138, considered and explained.

TRESPASS, for taking " three pits of charcoal, partly burned and unfinished." The suit was referred, by consent of parties, and the referee reported the facts substantially as follows.

The charcoal was taken by the defendants by virtue of legal pro-cess in favor of J. B. Huntley & Co. against the plaintiff,—the de-fendant Huntley being one of the plaintiffs in that suit, and the other defendant being the attaching officer who served the process. The charcoal in all the pits had been burned down, when attached, and that in one of them had been drawn out from the pit, and about one third of that in another. The coal in two of the pits, at the time it was attached, was subject to waste and decay, without the constant care of some one having some skill and knowledge in the manufac-ture of charcoal. The coal was advertised for sale in due form, to be sold on the tenth of March, 1847 ; and on the fifth of March, 1847, the plaintiff and the defendant Huntley executed and delivered to the defendant Pray, the attaching officer, a writing, agreeing that the coal in question might be sold by the officer on that day, and that all things should be the same, as though the sale had been made on the tenth day of March, as advertised. The officer still having doubts as to the propriety of selling the coal on that day, the plaintiff and the defendant Huntley, being present, gave the officer parol license to sell it on that day ; and it was accordingly sold. About one week previous to the attachment, the plaintiff and A. Chapman & Son had executed a writing, by which the plaintiff de-clared, that he had that day sold to Chapman & Son all the charcoal in the pits in question, at $3,50 for each one hundred bushels, and also all the wood which had then been chopped upon the land where the pits were, and that he was to burn all said wood into coal ; and Chapman & Son agreed to pay the plaintiff the price agreed upon, and also at the same rate for the coal which the said wood might make. But the referee reported, that the plaintiff still remained in possession of the coal pits, under a contract with Chapman & Son, that he would complete them and draw the coal to the forge of said Chapman & Son. The coal pits were on land owned by one Cushman.

There was charcoal in the two pits, to the value of fourteen dol-lars, consumed, after the attachment and previous to the sale; but that was owing in a great measure to the fact, that Chapman & Son

Hale *v.* Huntley et al.

claimed to own the coal, and, in consequence of negotiations for an arrangement between them and the defendants, which were carrried on with the knowledge of the plaintiff, the necessary care of the pits was suspended. The amount of coal sold from the three pits was about fifteen hundred bushels; and it was sold by the officer for one dollar, for each one hundred bushels, above its true value.

Upon these facts the referee decided, that the plaintiff was not entitled to recover,—but referred the question of law to the court. The county court, December Term, 1848,—BENNETT, J., presiding,—rendered judgment for the defendants, upon the report. Exceptions by plaintiff.

*O. Seymour,* for plaintiff, claimed, that the charcoal, upon the facts reported, was not subject to attachment,—upon which point he relied upon the case of *Wilds* v. *Blanchard,* 7 Vt. 138; that the sale to Chapman & Son was not complete, and the title would not vest in them, until the amount and price were ascertained by measure,—to which point he cited Chit. on Cont. 375; 7 Wend. 404; 3 N. H. 382; and 6 East 614; and that the license, given by the plaintiff to the officer, to sell on the fifth instead of the tenth of March, 1847, was a mere substitute of the one day for the other, without waiving any rights thereby.

*J. Prout* and *E. N. Briggs,* for defendants, insisted, that there was nothing in the situation of the charcoal in question, to prevent the officer's attaching and taking possession of it,—even under the authority of the case of *Wilds* v. *Blanchard,* 7 Vt. 138; that the plaintiff had assented to the acts of the defendants, by the license which he had given to the officer,—to which point they cited *Wilds* v. *Blanchard, ub. sup.,* and *Hewes* v. *Parkman,* 20 Pick. 90; and that the plaintiff, by reason of the transfer to Chapman & Son, had no title to the coal, and was in possession merely as their hired man,—citing to this point 2 Phil. Ev. 229; *Ludden* v. *Leavitt,* 9 Mass. 104; and 3 Esp. R. 114.

The opinion of the court was delivered by

POLAND, J.   1. The first question presented by this case is in relation to the plaintiff's interest in the coal at the time of the tak-

ing by the defendants. It appears, that, at the time of the execution of the writing, annexed to the report of the referee, by the plaintiff to Chapman & Son, the coal was not entirely burned, but the burning was to be completed by the plaintiff; and, as he was to be paid for the same by the bushel, which would, of course, require the coal to be measured, and this could not be done until after the burning of the coal became complete, and no delivery of the coal was taken by Chapman & Son, we think there was not such a sale of the coal, as would divest the plaintiff of the property in the coal and vest the same in Chapman & Son. The general rule, in relation to the sale of personal property, is, that, if any thing remain to be done by the seller to the property before delivery, no property passes to the vendee, even as between themselves. Chit. on Cont. 375.

2. Was the coal in such condition, at the time of the taking by the defendants, as not to be subject to attachment by the plaintiff's creditors? It is claimed by the plaintiff, that the coal in this case was in such condition, as to be within the doctrine of the case of *Wilds* v. *Blanchard,* 7 Vt. 138, and so not liable to attachment. It is to be remarked, that the exemption, which was sustained in that case, is not an exemption by statute, but one in contravention of the general laws of the state, and, of course, is not to be extended beyond the necessity, which dictated and justified the decision, which was made in that case. In that case the coal pits were only about half burned, and entirely incapable of removal by the officer, and in such condition, as to require the constant and active care and attention of some person, skilled in the business, for several days, in order to render the property of any value. The court, in that case did not decide, that, if the officer had chosen to take upon himself the burden of the completion of the coal, he had not the right to do so, but decided merely, that he was not bound to do so, and, inasmuch as in that case he did not do so, but suffered the same to remain in the owner's hands, who went on and completed the same without any direction from the officer, and then disposed of it, that the officer could not claim the coal by virtue of his attachment.

In this case the facts are widely different. A part of the coal was entirely finished and completed, so as not to require any farther attention, or labor, and the residue had so far progressed, as to have

Hale *v.* Huntley et al.

been entirely burned to coal, though some labor and skill were still necessary in order to separate and preserve it properly; and nothing appears from the report, but what the same might all have been secured. Under these circumstances, (without saying what the officer might be compelled to do,) if the officer saw fit to attach and take possession of the coal and run the risk of being able to keep it safely, we think he had the right to do so, and that we do not at all controvert the decision in *Wilds v. Blanchard* by so deciding. It is of course impossible to lay down any precise rule on this subject, as the circumstances and description of the various kinds of property subject to attachment are so widely varied,—and especially of articles in process of manufacture; which, of course, will be found in all stages, from the very commencement, to entire completion and perfection. When property, as in the case of *Wilds v. Blanchard,* would be entirely valueless, and be destroyed, by having the process of manufacture stopped, it is clear, that the officer is not bound to attach and risk the loss; neither is he bound to turn artist and carry forward the process of manufacture. At what precise point this obligation attaches, must of course depend upon the circumstances of each particular case, and cannot be made the subject of a general rule.

3. The property being subject to attachment by the defendants, the only remaining question relates to that portion of the property, which was suffered to be consumed for want of proper care and attention by the officer. It appears from the report of the referee, that this was occasioned by a delay, produced by a negotiation between the defendants and Chapman & Son, who claimed the coal, which negotiation was with the knowledge of the plaintiff. We are hardly satisfied by this statement, that the plaintiff should be made responsible for the consequences of the delay, as it is not stated to have been at his request; neither are we entirely satisfied, that the consent given by the plaintiff, for a sale of the property on the fifth of March instead of the tenth, as advertised, was intended to be any thing more than a mere substitution of one day for another, for the sale, reserving all the rights which the plaintiff would have had, if the sale had proceeded agreeably to the advertisement of the officer. But, on this part of the case, we think the plaintiff is not entitled to recover, because his claim is merely for the *nonfeasance* of the officer,

in not taking proper care of the property attached ; and this court have recently held, in the case of *Abbott* v. *Kimball et al.*, 19 Vt. 551, that such *nonfeasance* will not make the officer liable in *trespass*, or trover, and that, when such *nonfeasance* is permitted or suffered by a deputy sheriff, the action should be against the sheriff and not the deputy, and that the creditor is not liable for it, unless done by his command or assent,—neither of which appear in this case.

On the whole, we see no error in the judgment of the county court and the same is affirmed.