M. PHILLIPS & COMPANY *vs.* J. A. MAGOON, Administrator of the Estate of C. Alee.

REPLEVIN. EXCEPTIONS.

HEARING, MARCH 20, 1893.   DECISION, MAY 9, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

A agreed in writing with B to sell and deliver (at a future time) certain paddy to be grown. The agreement contains certain conditions as to quality, time of delivery, quantity and price precedent to the delivery and acceptance of the paddy. Held, that it was only an executory agreement and did not effect an absolute and complete sale, or pass the title to plaintiff; and that replevin could not be maintained under it.

OPINION OF THE COURT, BY BICKERTON, J.

The plaintiffs claimed of the defendant the right to the possession of twenty tons of paddy then on the rice plantation of Chulan & Company, situated at Waiahole, Koolaupoko, Island of Oahu, under an agreement or contract signed by the plaintiffs and Chulan & Company (consisting at that time of C. Alee, who has since died intestate), dated September 23d, 1891, in words and figures as follows:

"This indenture, made this 23d day of September, 1891, by and between Chulan & Co. of the first part, and M. Phillips & Co. of the second part, witnesseth:

"That the party of the first part for and in consideration of the sum of sixteen hundred dollars advanced to them this day, do hereby agree to sell and deliver in good merchantable condition to the parties of the second part at Aswan's rice mill at Waiahole, Island of Oahu, all of two crops of paddy raised on their plantation at Waiahole, the quantity not to be less than forty tons or eighty thousand pounds each crop.

"The first crop to be delivered between the 15th of May and 15th of June, 1892, and the second crop between November 15th and December 15th, 1892. It is understood and agreed by the parties of the first and second part, that the price for the paddy to be delivered as stated above is to be the ruling price at the time of delivery as established by J. A. Hopper.

"It is further agreed that the amount of sixteen hundred dollars advanced this day, the receipt of which is hereby acknowledged, and a further advance of five hundred dollars, to be made during the month of March, 1892, is to be deducted from proceeds of the first crop of paddy.

"Should the proceeds of the first crop of paddy not be sufficient to repay the amount advanced with interest at twelve per cent. per annum, the remaining balance shall be considered as part advance for the second crop, which is not to exceed sixteen hundred dollars, the said sum with interest thereon shall be deducted from second crop of paddy.

"In witness whereof the parties hereto have hereunto set their respective hands and seals the day and year first above written.

(Signed)                        "CHULAN & CO.,
(Signed)                        "M. PHILLIPS & CO.
"Witness:
(Signed)                        "THEO. F. LANSING."

This case came on for hearing at the October term, 1892, before the Chief Justice and a jury, and at the close of the evidence the Court, on motion of defendant's counsel, instructed the jury to find a verdict for the defendant on the ground that the agreement in evidence disclosed an executory agreement in which the title to the paddy did not pass to the plaintiff, to which instruction the plaintiff's counsel took an exception. The matter now comes here on a duly allowed bill of exceptions.

This agreement, on which this action is based, is on the face of it executory; from the language of the document itself no other construction can be put on it; for instance,

the words "do hereby agree to sell and deliver," mean that something is to be done, not something that is done. Then it is required that the paddy shall be in "good merchantable condition," that is, it shall be put in that condition before it is delivered; again, the quantity shall not be less than forty tons each crop. Then again, the first crop shall be delivered between the 15th of May and 15th of June, 1892, and the second crop between November 15th and December 15th, 1892, nearly fifteen months after the agreement was made. Then the price to be paid for the paddy to be delivered was to be the ruling price established by J. A. Hopper at the time of the delivery. Then there is an agreement for a further advance of $500 to be made during the month of March, 1892, which, together with the $1600 first advanced, is to be deducted from proceeds of the first crop of paddy; and if the proceeds of the first crop are not sufficient to repay the amount advanced with the interest, then the balance shall be deducted from the proceeds of the second crop. These are all conditions and contingencies—things to be done before delivery of the paddy. Under this agreement, if the paddy was delivered damaged, and not in good merchantable condition, would the plaintiffs be required to receive it? We are of the opinion they would not; or, should the crop be destroyed by fire or other casualty, certainly the loss would not fall on the plaintiffs; or should Chulan & Co. be unable for any reason to deliver any of the paddy, they would certainly have to refund all the money advanced with interest. Under these circumstances, how can it be claimed that the title passed at the time of the agreement, or that there was a complete and absolute sale of these two crops of paddy?

Two rules are stated by Lord Blackburn, as follows:

*First:* "Where by the agreement the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is to be bound to accept them, or as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of cirum-

stances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property."

*Second:* "Where anything remains to be done to the goods for the purpose of ascertaining the price, as by weighing, measuring or testing the goods where the price is to depend on the quantity or quality of the goods, the performance of these things also shall be a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in the state in which they ought to be accepted." Benjamin on Sales, Sections 318 and 319, and cases there cited.

Chancellor Kent said : "If the goods be sold by number, weight or measure, the sale is incomplete, and the risk continues with the seller until the specific property is separated and identified." 2 Kent, 496.

In *Riddle vs. Varnum*, 20 Pick., 280, one point of inquiry was whether there had been a complete sale of certain timber and plank lying in a mill-pond, the purchaser of which had signed a writing in which he acknowledged that he had " received of the vendor four shots of white oak plank, etc., for which I promise to pay him twenty-six dollars per thousand board measure. The above timber delivered in the mill-pond." The vendor acknowleding in writing that he had received from the purchaser two hundred dollars in part payment for the timber in question, the timber was to be measured by the superintendent and the measure was to be abided by. Before the timber was measured, it was attached by one of the creditors of the purchaser. In referring to the fact that at the time of the attachment the timber had not been surveyed and the measure ascertained, Dewey, J., says : "The general doctrine on this subject is undoubtedly that when some act remains to be done in relation to the articles which are the subject of the sale as that of weighing or measuring　*　*　the performance of such act is a prerequisite to the consummation of the contract; and until it is performed the property does not pass to the vendee."

The rule as set down in the majority of the cases seems to

be that where the seller agrees to do anything for the purpose of putting the property into a state in which the buyer is bound to accept it, or into a condition to be delivered, the title will remain in him until he has performed the agreement in this respect. In the case of *Gibbs vs. Benjamin*, 45 Vt. 124, the defendant agreed to purchase all the wood piled on plaintiff's farm on the margin of Lake Champlain at $3.50 per cord, the wood to be measured to ascertain the quantity. The parties met for that purpose and they disagreed, and the matter remained unsettled. The wood was carried away by a flood in the lake and lost. An action was brought to recover the price of the wood. Redfield, J., said: "The principle is well settled and uniform in all cases, that where anything remains to be done by either or both parties, precedent to the delivery, the title does not pass. And so inflexible is the rule, that when the property has been delivered, if anything remains to be done by the terms of the contract before the sale is completed, the property still remains in the vendor. The contract must be executed to effect a complete sale, and nothing further to be done to ascertain the quantity, quality or value of the property."

The same rule of law was applied in *Hale vs. Huntley*, 21 Vt., 147; *Fuller vs. Bear*, 34 N. H., 290; *Prescott vs. Lock*, 51 N. H., 94, and a number of other cases from New Hampshire, Arkansas, Indiana, Iowa and Michigan.

It seems to us that it is unnecessary to make any further citation of authorities in support of this rule, they are so numerous and uniform. This being an action in replevin, in order to maintain this action, the plaintiffs must show a right to the exclusive and immediate possession in themselves, as against the defendant; and the burden of proof lies on them to do this. This case must stand or fall on the written agreement filed in evidence; and we are of the opinion that no title passed under it, that it is only an executory and conditional agreement and does not effect an absolute and complete sale. We do not hold that under this

instrument the plaintiffs would be without remedy in an action for damages for breach of contract.

For the above reasons we are of the opinion that the Court below did not err in giving the instructions asked for, and therefore the exceptions are overruled.

*F. M. Hatch,* for plaintiffs.

*W. R. Castle,* for defendant.