## HERRICK and others *vs.* CARTER.

The plaintiffs, at various times, sold and delivered to the defendant, dry goods out of their store, to an aggregate amount of $331.68; in consideration of which, and in payment thereof, the latter agreed to deliver to the plaintiffs, on or before a day specified, nails, at the rate of $5.37½ per one hundred pounds. *Held* that the transaction was a *purchase of dry goods* from the plaintiffs, by the defendant, from time to time, on credit, the goods being delivered at the time of each purchase, and to be paid for in nails on or before the day mentioned; and *not a purchase of nails*, to be paid for in dry goods, or even an exchange of nails for dry goods.

*Held, also,* that the plaintiffs were entitled to recover the balance of the purchase money of the goods sold, remaining unpaid, with interest from the time the same became payable.

APPEAL from a judgment in favor of the plaintiffs, entered upon the report of a referee. The material facts are stated in the opinion.

*F. W. Hubbard,* for the appellant.

*D. O'Brien,* for the respondents.

*By the Court,* FOSTER, J. The action was brought to recover the value of a quantity of nails which the plaintiffs were to receive from the defendant, at the price of $5.37½ per 100 lbs., for certain dry goods which the defendant had purchased and received from the plaintiffs, out of their store in Watertown. On the trial the nails were found to be of the value of $8 per hundred weight.

The referee found, as matters of fact, according to the case as settled, that the plaintiffs sold and delivered to the defendant certain goods, upon which the sum of $1.04 remained unpaid. That on the 24th day of September, 1863, they sold and delivered to him goods to the amount of $147.70, and on the 24th of October, 1863, goods to the amount of $183.98, amounting in all to $331.68; in consideration of which, and in payment thereof, he agreed

to deliver to the plaintiffs, at Watertown, on or before the
1st day of May, 1864, nails, at the rate of $5.37½ per one
hundred pounds. That, pursuant to said contract, the de-
fendant delivered to the plaintiffs, at Watertown, nails to
the amount of $139.76, leaving due the sum of $191.92,
payable in nails at the rate of $5.37½ per one hundred
pounds, to be delivered at Watertown on or before the 1st
of May, 1864; and that the defendant failed to deliver
said nails, on or before said 1st day of May.

The referee further found, " as matters of fact, that the
agreement and transaction between the parties was a
purchase by the plaintiffs, and a sale by the defendant, of
a quantity of nails, at an agreed price per hundred, to be,
and was then, paid for by the plaintiffs in dry goods; and
on the part of the defendant, a purchase, of the plaintiffs,
of a certain quantity of dry goods, at an agreed price, to
be paid for in nails at an agreed price. That the nails
were purchased by the plaintiffs and the goods by the de-
fendant, each for the purpose of trade, and, by the terms
of the contract, no money was to be paid by either party ;
the intention of the plaintiffs was the purchase of nails ;
of the defendant, the purchase of dry goods. That the
defendant failed to deliver the nails, pursuant to the agree-
ment, at any time, and that nails were worth $8 per hun-
dred at Watertown on the 1st day of May, 1864." And
the referee ordered judgment for the plaintiffs for the value
of the nails at $8 per hundred, amounting to $288, being
the difference between $192.96 and the value of the nails
which the contract called for, at $8 per hundred, including
interest from the first of May, 1864. To all of which find-
ings of fact and of law the defendant duly excepted.

I can find nothing in the case to support the conclusion
of the referee, that there was a purchase of the nails in
question by the plaintiffs. On the contrary, the whole
testimony shows, clearly, that the transaction was a pur-
chase of dry goods, by the defendant, from time to time ;

the goods being delivered at the times of the purchase, and to be paid for in nails, on or before the 1st day of May thereafter. Such was the only theory of the plaintiffs when the action was commenced.

The complaint does not allege any purchase of the nails by the plaintiffs. On the contrary, it claims "that at divers times between the 23d day of May, 1863, and the 23d day of October, 1863, the plaintiffs sold and delivered to the defendant, goods, wares and merchandise of the value and agreed price of $566.72, which the defendant then and there agreed to pay in good, merchantable nails, to be delivered to the plaintiffs, on or before the 1st day of May, 1864, at the rate and price of $5.37½ per hundred." It then alleges that the defendant *paid* thereon in nails the sum of $373.76, leaving a balance due the plaintiffs of $192.98, *payable* in nails at $5.37½ per hundred;" and claims that such balance in nails was worth $432.

The proof, on the trial, also clearly shows that the *purchase* was a *purchase of dry goods* to be *paid for in nails.*

Humphrey Sisson, one of the plaintiffs, testified that "he knew the defendant; he has dealt with our firm, through his agent, H. McCollom, during the last two years. We sold and delivered to him a quantity of goods. The bills were as follows: February 27, 1863, $136.82; June 14th, $122.22; September 24th, $147.70; October 24th, $183.98, making in all $590.72. Our firm received of the defendant, to be credited, in nails, as follows: May 7th, 1863, $24; June 24th, $24; June 29th, $24; September 18th, $48; October 12th, $60; December 23d, $78; December 23d, $26.88; October 19th, $37.63; July 7th, 1864, $21.50; and February 9th, $53.75; making $397.76, and leaving a balance of $192.96, to be paid in nails at $5.37½ per hundred pounds." He further testified, that "the first two, amounting to $259.04, were payable in nails at $6 per hundred, which was paid up, except $1.04. The other two bills were to be paid for in nails

at the rate of $5.37½, and that a part has been paid, leaving $192.96 due thereon; and that the nails were to be delivered on or before the first of May, 1864; and that the nails were purchased, or *contracted for*, by our firm, for the purpose of selling at a profit."

On his cross-examination he said: "I made the bargain with McCollom, myself. The arrangement of the $5.37½ was made Sept. 24th, 1863, the day he purchased the goods. This arrangement was made for each purchase, when made. Bargains were made in the store. I proposed to sell him the goods and take pay in nails. We agreed upon $5.37½ per hundred as the price of the nails. I wanted nails to sell to our customers."

Henry H. Ayres, another of the plaintiffs, testified that he "was present at the arrangement for the last two sales of goods. *They were to be paid for* in nails at $5.37½ per hundred pounds, to be delivered on or before the first of May, 1864. The goods were delivered on the dates mentioned in the bills. The nails in question were purchased by our firm from the defendant, and paid for by sale of dry goods. They were bought by our firm for the purpose of selling at a profit. There was no agreement or understanding between our firm and the defendant, that the goods were to be paid for in money, or in any other way except in nails. No other kind of payment was intended."

Hiram McCollom, the agent of the defendant, testified that it was a purchase of goods made by him of the plaintiffs, to be paid for in nails.

I think it would be a manifest perversion of the testimony to call it a purchase of nails, to be paid for in dry goods, or even an exchange of nails for dry goods. No quantity of nails was bargained for. No amount in *value* of nails was specified. But the defendant from time to time bought dry goods of the plaintiffs, in such quantities as he desired, and those amounts were to be paid for in

Herrick *v.* Carter.

nails, and it seems as though the only apology for the conclusions of the referee is, that the plaintiffs swear they wanted the nails to sell to their customers and at a profit, and yet they kept only a dry goods and boot and shoe store. Doubtless as nails rose in price they *did* want them at $5.37½ per hundred; but if they had fallen, after the agreement, and had not been furnished in time, upon a suit to be brought on the contract, they would have wanted the money, at the contract price of the goods, instead of the market value of the nails.

It is worthy of notice that the referee, in his *report*, did not find that there was a purchase of the nails, to be then paid for in dry goods; and such finding first appears subsequent to this appeal; but, on the contrary, he found it was a purchase of dry goods to be paid for in nails at an agreed price per hundred.

Assuming, therefore, as I think we must, that the transaction was a purchase, by the defendant, of the dry goods in question, at a price agreed upon, on credit, and to be paid for thereafter in nails at a fixed price, what is the amount of damages which the plaintiffs were entitled to recover? The rule in such case, in this State, is that the recovery must be for the balance of the purchase money for the goods sold, remaining unpaid, with interest thereon from the time the same became payable. (*Pinney* v. *Gleason,* 5 *Wend.* 393. *Rockwell* v. *Rockwell,* 4 *Hill,* 164. *Stevens* v. *Low,* 2 *id* 132. *Sedgwick on Damages,* 239.) The rule is the same in Connecticut. (*Brooks* v. *Hubbell,* 3 *Conn. Rep.* 58.)

In this case the balance unpaid was $192.96, for which sum, with interest from the 1st day of May, 1864, the plaintiffs were entitled to recover.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

[ONONDAGA GENERAL TERM, June 27, 1865. *Morgan, Bacon* and *Foster,* Justices.]