WALLINGFORD, SHAMP & CO., PLAINTIFFS IN ERROR, v. L. C. BURR, DEFENDANT IN ERROR.

1. **Sale.** When anything remains to be done between the buyer and seller before the goods are to be delivered, a present right of property does not attach in the buyer.

2. ———: EXECUTORY CONTRACT. An agreement to sell and transfer property at prices to be afterwards determined, is an executory contract.

ERROR to the district court for Lancaster county. Tried below before GASLIN, J., sitting for POUND, J.

*Brown & Ryan Brothers*, for plaintiffs in error, cited, *inter alia:* McDonald v. Hewitt, 15 Johns., 349. Kein. v. Tupper, 52 N. Y., 550–552. Strauss v. Ross, 25 Ind., 300. Schneider v. Westerman, 25 Ill., 514. Shaw v. Nudd, 8 Pick., 9. Hunter v. Hutchinson, 7 Pa. St., 140. Dempsey v. Gardner, 127 Mass., 381. Watson v. Rogers, 53. Cal., 401. McCoy v. Clapp, 47 Iowa, 418. Benjamin Sales, § 320 *et seq.*, 374 and cases cited. Langdell Sel. Cases, 464, 529, 1010. 2 Sutherland Damages, 353. Barrett v. Turner, 2 Neb., 174. Goodman v. Kennedy, 10 Id., 272.

*O. P. Mason*, for defendant in error.

MAXWELL, J.

In January, 1882, the plaintiffs and one Henry Keefer entered into an agreement, as follows: "It is hereby stip–

ulated and agreed between Henry Keefer, as party of the first part, and J. Shamp, J. S. Wallingford, and J. Delos Brown, as parties of the second part, that said party of the first part *shall* sell and transfer to said parties of the second part certain goods and implements, including cultivators, plows, harrows, and such other salable implements as he may have and own, at actual cost of said goods to him, said cost to include carriage of goods but no storage. Also transfer to said parties of the second part the lease held by him on the building he now occupies, also his good-will in trade. Also to sell the said parties of the second part one team of horses and two second-hand spring wagons at such reasonable prices as may be agreed upon. And the said parties of the second part agree to receive said goods as per said stipulation, and pay to the said party of the first part for said goods one thousand dollars cash, and whatever balance may be coming to him from them at any time between this present date and January 1st, 1883, as may be agreed on, the prices of said goods aforementioned to be decided by his bills, contracts, and discounts on the lines of goods in which they are included. Said party of the first part further agrees not to enter into or conduct any farm implement business in this city for the space of two years from this date. Said parties of the second part further agree to assume such of said first party's contracts with manufacturers for the sale of their goods for 1882 as they may be able to renew. Said party of the first part further agrees that on all contracts made with parties for weighing and room rent, on which he may have received advanced moneys, to return or pay to the parties of the second part such part of said money as may apply for work or rent of said rooms after date of transfer of said business to said parties.

"In witness whereof we hereunto subscribe our names.

"HENRY KEEFER,
"J. S. WALLINGFORD,
"J. SHAMP,
"J. D. BROWN."

Keefer was engaged in the business of selling farm machinery in Lincoln, and owned some of the implements and articles kept by him for sale, and also kept for sale goods on commission.   The work of making an invoice of the stock commenced on the ninth of January, 1882, and seems to have continued until the seventeenth, when it was completed and the prices agreed upon.   It appears that the plaintiffs required a bill of sale in order that there would be no mistake about the property they had purchased from Keefer and that which he held on commission.   Keefer seems to have consented to this, and it was agreed that Shamp should go to an attorney's office and have one prepared.   Shamp thereupon went to an attorney's office and had a bill of sale prepared, and returned to the store, and while Keefer was examining the same preparatory to signing it, the sheriff came in with an execution against Keefer & Lindley, and levied upon the goods as belonging to Keefer, and sold the same upon said execution, the aggregate amount of the sales being the sum of $1,485.85. Keefer thereupon assigned the above contract and all his rights thereunder to the defendant in error, who brought this action thereon, and on the trial a verdict was rendered in his favor for the sum of $2,529.28.   A motion for a new trial having been overruled, judgment was entered on the verdict.

The only question for determination is, was the sale to the plaintiffs in error complete when the execution was levied?   It will be observed that the agreement copied above does not purport to be a completed sale.   It is merely an agreement that the party of the first part *shall* sell and transfer his goods and business to the parties of the second part, and transfer the lease of the store and good-will to them, and *to* sell one team of horses and two spring wagons at such reasonable prices as may be agreed upon.   So, the parties of the second part are *to* receive said goods as per said stipulations, and to pay $1,000 in cash and the balance

with interest at not to exceed seven per cent at such time as may *be agreed* on between that time and January 1st, 1883. Such a contract is merely executory. And although afterwards the terms were agreed upon, still the contract was not completed by the execution of the bill of sale and the delivery of the goods to the plaintiffs in error and payment of the $1,000 cash, nor was any evidence of indebtedness given for the balance due. A clear preponderance of the evidence shows that Keefer was to execute a bill of sale of the goods sold, and that he was examining the same preparatory to signing it when the execution was levied. If anything remains to be done between the buyer and seller a present right in the property does not attach in the buyer. 2 Kent's Com., 495, and cases cited. In this case it is clear that the parties themselves did not consider the sale complete at the time the execution was levied. Mr. Keefer not having delivered the property in any manner, the title had not passed to the plaintiffs in error.

In October, 1879, one A. W. Chilcot commenced an action in the district court of Lancaster county against Henry Keefer and Samuel P. Lindley, as partners, and recovered a judgment for the sum of $4,047.74, with 12 per cent interest and $120 attorney fees. To obtain this judgment the attorney for Chilcot entered into the following agreement:

"A. W. Chilcot
v.
Keefer & Lindley. } In the district court of the second judicial district in and for Lancaster county.

"In consideration of one dollar to me in hand paid, I hereby agree not to issue execution in this case against the individual property of Henry Keefer, and do hereby release the individual property of Henry Keefer from the lien of the judgment to be obtained in this suit, without prejudice to my lien and right of execution against the property of the late firm of Keefer & Lindley, and without

prejudice to the right of contribution of S. P. Lindley against Henry Keefer.

"Lincoln, Oct. 3, 1879.

"A. W. CHILCOT,
"By L. C. BURR,
"Specially authorized to act for above stipulation."

The testimony tends to show that the object of recovering the judgment was to obtain a lien upon a lot claimed by Keefer & Lindley. The execution under which the property in question was sold was issued on the above judgment. The above agreement of Chilcot's attorney was read to the court but not admitted in evidence. Some stress, however, is laid upon it in the defendant's brief. As between Keefer and Chilcot, if the attorney was duly authorized and there was a sufficient consideration, as by the surrender of a valid defense, or in any other way, there is no doubt of its validity. But these plaintiffs could not take advantage of the agreement. It was for Keefer to do so, and prevent the sale of the goods upon the execution. The defendant claims that he purchased the claim in question relying upon the plaintiff's admissions of indebtedness. It is very clear, however, that he knew, or with proper inquiry could have known, all the facts in the case, and is not an innocent purchaser. He took only the interest possessed by Mr. Keefer in the claim. The property was sold as belonging to Keefer, and, so far as appears, without objection from him. His debt to the amount realized for the property has been satisfied. Unless it is satisfactorily shown that he had delivered the property—done all that he was to do to part with the title—it must be treated as his property which was applied to the payment of his debt. The plaintiffs in error should not be required to pay for property that they did not receive, unless through their own fault it was lost. This we think the proof fails to show. But for the goods obtained by them which were held on commission, for the store and good-will, and any other

property they may have received, they are liable. They are not liable, however, for the property sold by the sheriff. The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.