CHARLES M. HOLMES, PLAINTIFF IN ERROR, V. WILLIAM P. BAILEY, DEFENDANT IN ERROR.

1. **Sale:** HAY IN STACK: CONTRACT: CONVERSION. A purchased of B seventy-five tons of hay which was standing in the stack in the field, containing over one hundred tons; the hay to be delivered by B in the city of P. No part of the hay was set off, designated, or delivered in the field. B afterwards delivered twenty tons to A at P., after having it weighed as required by the contract. *Held,* That A did not acquire title to or possession of the fifty-five tons not delivered and that he could not maintain an action against C for the conversion of the same. His remedy was by action against B for damages resulting from a failure to perform the contract.

2. **Conversion:** TITLE. In an action for damages alleged to have been sustained by reason of the conversion of personal property, the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of the title of the defendant.

ERROR to the district court for Cass county. Tried below before POUND, J.

*Smith & Beeson,* for plaintiff in error.

*M. A. Hartigan,* for defendant in error.

REESE, J.

The plaintiff commenced this action in the district court of Cass county, and in his petition alleged that on the first day of March, 1881, he was the owner of fifty-five tons of hay on the farm of the defendant, and that the defendant wrongfully converted said hay to his own use, to the damage of the plaintiff, etc.

The defendant answered: 1. A general denial. 2. That said plaintiff claimed said hay through one Howland, and that said Howland attempted to purchase said hay of the defendant but never accomplished or completed the same, a condition precedent being the payment for said hay, which Howland never fulfilled and never in any manner acquired any right thereto. 3. That the contract between Holmes and Howland, by which Holmes claimed to have purchased said hay, had been rescinded and the consideration returned by Howland. 4. That the hay claimed by plaintiff was cut and made on defendant's land and remained thereon until it was used, and that all acts of the defendant in relation thereto were as the absolute owner thereof.

The plaintiff replied, denying the allegations of the answer and alleging that at the time of the negotiations for the purchase of the hay by plaintiff, the defendant was present and knew that Howland was about to sell it to the plaintiff; that he took part and assisted in making the contract and knew all about it, and did not make any claim to said hay, but spoke of and treated it as the property of Howland, and that plaintiff had no knowledge or information that defendant made or had any claim to the hay, and that defendant is now estopped to set up any claim to the same. A trial was had to a jury, who returned a verdict in favor of the defendant, and the plaintiff prosecutes proceedings in error in this court.

The plaintiff in error insists that the verdict of the jury

is not supported by the evidence, and is in direct conflict therewith and is in conflict with the instructions of the court.

The facts as drawn from the evidence are substantially as follows: Howland, from whom plaintiff claims to have made the purchase of the hay, is the grandson of and resided with the defendant. Some time before the contract between the plaintiff and Howland was made, Howland purchased of the defendant his hay at the agreed price of five dollars per ton. No part of the hay was delivered, and by the terms of the contract none of it was to be taken away until paid for, the title to remain in the defendant until this condition precedent was performed. Howland went to the stables of the plaintiff in Plattsmouth and proposed selling him some hay. The plaintiff proposed trading to Howland a span of mules. No trade was made on that day, Howland saying if he concluded to close the trade he would return and complete it. Howland did not return, and the next morning the plaintiff, with one Stahlman, went to the farm of the defendant and there a contract was made by which the plaintiff purchased of Howland seventy-five tons of hay for which he paid Howland one hundred dollars in money and was to deliver to him the mules, which he afterwards did; the contract being that Howland was to deliver the hay to the plaintiff in Plattsmouth, to be weighed and delivered as Howland could do so. The testimony shows that there was from one hundred to one hundred and twenty-five tons of hay in the field when the contract was made, and that no specific stacks or ricks were selected or set off to the plaintiff, it being understood by the parties that Howland would sell hay on the street to other parties and get the money therefor in order to make the necessary payments to the defendant for the hay. At the making of this contract the defendant was not present, although the plaintiff first went to his house and in his presence talked with Howland about the trade, and nothing

was said by the defendant as to his title to the hay. But when the plaintiff and Howland left the house to go to the field there was a difference between them of some twenty-five dollars, each declaring he would not yield, and to all appearances the trade was at an end. The hundred dollars received by Howland was paid to the defendant and Howland began delivering hay to the plaintiff and delivered to him about twenty tons, when he returned the mules, claiming they were diseased, and refused to deliver any more hay. The plaintiff was preparing to go to the farm of defendant for the purpose of taking the hay when the defendant forbade him doing so until he had received his pay therefor.

The first point made by the defendant in error is, that this action can not be maintained, for the reason that the plaintiff had no such title to the hay as is necessary to maintain an action for its conversion. This objection seems to us to be well taken, and in our view of the case, presents an insurmountable barrier to the plaintiff's recovery. He has never, at any time, had either the actual or constructive possession of the property, which he alleges has been converted by the defendant, nor has he at any time been entitled to its possession. None of it had ever been delivered to him, nor was it in any way set apart or separated from the other hay at the time of the purchase. The contract between plaintiff and Howland was for seventy-five tons of hay, which Howland was to deliver to plaintiff at Plattsmouth after first having it weighed. No delivery was made or attemped to be made in the field, in fact the contract by its express terms negatived any such purpose. Then it was not such a sale as would vest the title in the plaintiff. Suppose the contract had been entirely satisfactory to Howland and the defendant, and after the delivery of the twenty tons received by the plaintiff the remainder should have been destroyed by fire, would the plaintiff have been the loser thereby, or could

he have called upon Howland for the remaining fifty-five tons of hay? But one answer can be made. Howland had agreed to deliver to the plaintiff, at Plattsmouth, seventy-five tons of hay; he must comply with his contract or respond in damages to the plaintiff. It was a personal contract on the part of Howland, and he could take his choice, fulfill it or pay the damages sustained by reason of his failure. This view of the case is not met by the suggestion that the parties to the contract went to the field where this particular hay was, and that the contract was made with reference to those particular stacks and ricks. The quality of the hay was an important factor in the trade, and the knowledge on the part of the plaintiff that Howland had a large quantity of hay, whch would enable him to comply with his contract to furnish, was to him a matter of importance. Could it be contended that no other hay of the same quality would fill the measure of Howland's contract? We think not. If we are correct in our conclusions there was no sale of any particular hay to the plaintiff by Howland, and the plaintiff's only remedy is against him for the breach of his contract.

In *Herrick v. Carter*, 56 Barb., 41, the plaintiff sold and delivered to the defendant dry goods, which the latter agreed to pay for in nails at a certain price, to be delivered on or before a future day specified. The transaction was held not to be a purchase of nails, nor even an exchange of dry goods for nails; but that the seller of the dry goods might recover for their purchase money with interest from the day it became payable. When anything remains to be done by either or both the parties to a contract of sale, before delivery, either to determine the identity of the thing sold, the quantity, or the price, the contract until such things are done is executory merely, and the title does not vest in the purchaser. *Hale v. Huntley*, 21 Vt., 147. *Wallingford v. Burr*, 15 Neb., 204. *Hudson v. Wier*, 29 Ala., 294. *Stone v. Peacock*, 35 Me., 385. *Cunningham*

*v. Ashbrook*, 20 Mo., 553. As a general rule the title to goods does not pass so long as anything remains to be done to identify the goods, or to determine the quantity or quality, if the price depends upon such determination. *McClung v. Kelley*, 21 Iowa, 508. *Lingham v. Eggleston*, 27 Mich., 324. *Banchor v. Warren*, 33 N. H., 183. *Stephens v. Santee*, 49 N. Y., 35.

This action for conversion is in effect the common law action of trover, and in order to maintain that action the plaintiff must have had the actual custody of, or some species of property, either general or special in the property, which is the subject of the action. *Bertholf v. Quinlan*, 68 Ill., 297.. *Barton v. Dunning*, 6 Blackf. 209. *Kennington v. Williams*, 30 Ala., 361. *Hickok v. Buck*, 22 Vt., 149. And he must also have an immediate right to the possession of the property. *Clark v. Draper*, 19 N. H., 419.

. It is claimed by the plaintiff in error, that the defendant is estopped to set up his right to the hay under his conditional contract of sale to Howland for the reason that he did not make known to the plaintiff his rights before the purchase by the plaintiff. It would not be absolutely essential that the information should come directly from the defendant, if the plaintiff had knowledge of his rights before the purchase. As to whether he had that knowledge was a question for the jury to determine, there being some evidence from which it might be inferred. But in this case that question becomes unimportant as it is well settled that the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of that of the defendant. *Davidson v. Waldron*, 31 Ill., 120. *Mulligan v. Bailey*, 28 Ga., 507. *Zunkle v. Cunningham*, 10 Neb., 162.

From the foregoing we conclude the district court did not err in overruling the plaintiff's motion for a new trial,

and that the judgment of that court must be affirmed, which is done.

JUDGMENT AFFIRMED.

THE other judges concur.