BARTLETT Y. YODER ET AL. V. GEORGE D. HAWORTH ET AL.

FILED DECEMBER 8, 1898.   No. 8396.

1. **Sales:** CONSTRUCTION OF CONTRACT. The contract between the parties set out in the opinion, and *held* not one of conditional sale, nor one of agency, but an unconditional contract of bargain and sale.

2. ——: ——. *Osborne v. Plano Mfg. Co.*, 51 Neb. 502, and *National Cordage Co. v. Sims*, 44 Neb. 148, distinguished. *Mack v. Drummond Tobacco Co.*, 48 Neb. 397, followed.

ERROR from the district court of York county. Tried below before BATES, J. *Reversed.*

*George B. France*, for plaintiffs in error.

*Gilbert Bros., contra.*

RAGAN, C.

This is an action of replevin brought in the district court of York county by George D. Haworth against Bartlett Y. Yoder and others. At the conclusion of the evidence the jury, in obedience to an instruction of the court, returned a verdict in favor of Haworth. To review the judgment entered upon this verdict Yoder has filed here a petition in error.

1. During the years 1893 and 1894 one Burr was en-

Yoder v. Haworth.

gaged in the business of selling agricultural implements in the city of York, Nebraska, and in said years acquired from Haworth under a written contract, hereinafter to be noticed, the possession of a lot of agricultural implements. In July, 1895, Burr was indebted to Kingman & Co. and to the Gale Manufacturing Company in a large sum of money. In satisfaction, or part satisfaction, of this indebtedness Burr sold and delivered to Kingman & Co. and to the Gale Manufacturing Company the property in controversy in this action, being property which he had acquired from Haworth under his contract with him hereinafter to be noticed. Haworth, claiming to be the owner of the property sold and transferred by Burr to Kingman & Co. and to the Gale Manufacturing Company, brought this action of replevin therefor against Yoder, who was in possession of the property as the agent of Kingman & Co. and of the Gale Manufacturing Company. The contract between Burr and Haworth under and by virtue of which Burr came into possession of the property sold to Kingman & Co. and to the Gale Manufacturing Company was and is in the words and figures following:

"YORK, NEB., Jan. 11, 1893.

"*Messrs. Haworth & Sons, Decatur, Ill.:*

"Please manufacture and deliver on board cars at Council Bluffs and ship to our address on or before the 15th day of March, 1893, the following bill of check rowers, to be sold on commission for your account, and subject to the following conditions, viz.:

| No. | Width of Drop. | Remarks. | Price. | Total Amt. | Name of Kind. |
|---|---|---|---|---|---|
| 25 planter....... | ⅜ | Wide wheels.... | $24.00 | | Planter Ck. R. |
| 25 Haworth steel . | " | "      " | 10.00 | | |
| 10 Brown steel ... | ⅜ | | | | |
| 20 coils wire ..... | ⅜ 10 | | | | |
| 10 " . " ..... | " 20 | | | | |
| 4 " " ..... | " 40 | | | | |
| 10 " " ..... | ⅜ 20 | | | | |
| 10 " " ..... | " 10 | | | | |
| 4 " " ..... | " 40 | | | | |

"If all is paid cash July 1, the net price of planters to be $23.50, C. rowers $9.50 each, and ten per cent off on extras.

"1st. All machines shall be received and immediately put in good store, free of expense to you, and we be your agent for all goods furnished us for sale on your account.

"2d. The freight and storage shall be paid by us and the amount shall form no part of any expense to be paid by you. All machines shall be forwarded in accordance with your orders, only collecting on such forwarded machines the freight and drayage paid on same, and I will carry insurance at my expense in such an amount as will cover loss by fire, lightning, or tornado.

"3d. All machines shall be sold for cash, or good farmers' notes taken in Haworth & Sons' name, payable not later than September first next, with ten per cent interest from day of sale; and all such notes shall be indorsed and the payment guarantied by ———, and given to you as collateral on my note, which we will give you for the amount of my account unpaid July 1, 1893.

"4th. All notes shall be taken upon blanks furnished by you, with all the blank spaces fully filled in with ink.

"5th. All money and notes shall be forwarded to you immediately, either by mail or express, and a receipt taken therefor, none of which shall be converted to our use till complete settlement is made.

"6th. All extra orders for machines shall be upon the same terms and conditions as above, and will only be ordered upon valid orders taken by us.

"7th. All extras shall be sold for cash, and the amount immediately remitted to you as our employer, less thirty per cent from the extra list price for rope, wire, reels, and castings.

"8th. We further agree to see that all planters and check rowers sold by us are properly connected and operated as per directions when started to work, and be governed by the instructions.

"9th. A final settlement shall be made for all machines and extras ordered, on or before June 1, 1893.

"10th. We further agree that should we neglect or fail to sell all of said planters and check rowers by the first day of July, 1893, to store in good order, free of charge, all planters and check rowers unsold, subject to your order.

"Yours truly,                    BURR & CO.

"HAWORTH & SONS."

"Exhibit A.    T. E. K., Rep."

The district court proceeded upon the theory that this contract was one of agency merely, existing between Burr and Haworth; that by virtue and because of the contract the title to the property furnished Burr thereunder never passed to him but remained in Haworth. We think this conclusion of the learned district judge wrong.   This is not a conditional contract of sale such as was construed in *Osborn v. Plano Mfg. Co.*, 51 Neb. 502; nor is it a contract of agency such as was construed in *National Cordage Co. v. Sims*, 44 Neb. 148, but it is an absolute and unconditional contract of sale such as was construed in *Mack v. Drummond Tobacco Co.*, 48 Neb. 397. In the latter case the contract between the parties provided that Mack was thereby appointed the agent of the manufacturing company to sell its tobacco at such prices as it might direct.   Mack was to be paid a certain commission on all sales made if he sold the tobacco furnished him at the price fixed by the tobacco company; and if he sold it for a less price, he was to have no commission.   By the contract Mack was required to guaranty the payment of all tobacco shipped him by the manufacturer.   Mack was to execute and deliver his notes due in sixty days for the tobacco furnished him by the manufacturer, and it was held that the contract was not one of agency for the sale of the manufacturer's goods by Mack, but a contract of sale, and that the tobacco furnished Mack under the contract, upon its delivery to him, became his property.   The contract in-

volved in this action does provide that Burr shall sell goods furnished him by Haworth on commission and for Haworth's account. But this clause of the contract does not so dominate and control the other provisions thereof as to make it a contract of agency. By the contract Haworth was to manufacture the goods ordered by Burr and deliver them on board the cars at Council Bluffs and ship them to Burr's address before a certain date. The price which Burr was to pay for the goods was fixed in the contract. Burr was to pay the freight on the goods. He was to sell the goods for cash or take good farmers' notes therefor, and the notes were to be taken payable to Haworth and guarantied by Burr, and delivered to Haworth. Now were these farmers' notes so taken, guarantied, and delivered by Burr to Haworth to be Haworth's notes? Not at all. But they were to be held by Haworth as collateral security for Burr's notes given to Haworth for the goods delivered. Burr was to make the settlement with Haworth on or before June 1, 1893, and by July 1 of said year was to give his note to Burr for the value of all goods received from Haworth; and to secure the payment of this note Haworth was to hold the farmers' notes which Burr had taken. Furthermore, when Burr sold any goods for cash or took farmers' notes, he was to remit these notes and cash to Haworth, the cash to be credited on Burr's indebtedness and the notes to be held as collateral security therefor. Again, the contract provided that if Burr paid for all the goods received by him by July 1, then the net price of the planters furnished him, instead of being $24, was to be $23.50, and the price of the check rowers, instead of being $10 each, was to be $9.50, and he was to have a discount of ten per cent on the price of all extras furnished. By the last clause of the contract it was provided that Burr would store the goods on hand unsold on July 1, subject to Haworth's order. This was simply a promise on the part of Burr that the property unsold on July 1, 1893, should be held by Burr

as security for what he owed. Our conclusion is that the contract between Haworth and Burr was an absolute contract of sale; and that whatever property was delivered to Burr in pursuance of that contract became his property. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.