DIANE ALLEN, PERSONAL REPRESENTATIVE OF THE ESTATE OF MARY BEATRICE CARPENTER, DECEASED, APPELLEE, V. DEALER ASSISTANCE, INC., A CORPORATION, APPELLANT.

299 N.W.2d 744

Filed December 12, 1980. No. 43049.

Van Steenberg, Brower, Chaloupka, Mullin & Holyoke for appellant.

Rick L. Ediger of Raymond, Olsen & Coll, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellant, Dealer Assistance, Inc., a corporation, (Dealer) appeals from a decision of the District Court for Scotts Bluff County, Nebraska, which entered judgment in the amount of $13,000, plus interest, in favor of the appellee, Diane Allen, as personal representative of the estate of Mary Beatrice Carpenter, deceased, (Carpenter) and against Dealer. The judgment was based upon a finding by the trial court that Dealer had unlawfully converted the prop-

erty of Carpenter, to Carpenter's damage. Dealer maintains that the trial court erred in entering the judgment as it did. We agree with Dealer and accordingly reverse and dismiss the action.

The record herein discloses that Leisure Living Mobile Homes, Inc. (Leisure), a Nebraska corporation, was engaged at Mitchell, Nebraska, in the business of selling new and used mobile homes. On July 21, 1975, Leisure executed and delivered to Dealer a security and financing statement securing a floor plan agreement, which statement was filed in the office of the Scotts Bluff county clerk on July 28, 1975. The financing statement covered all new and used mobile homes of Leisure then owned or thereafter acquired.

In the spring of 1976, Carpenter purchased from Leisure a Chickasha mobile home (coach) for the sum of $12,555. Apparently, Carpenter became dissatisfied with the coach and decided to purchase a Geer mobile home from Leisure, intending to trade the coach in to Leisure in connection with the purchase of the Geer. While Leisure maintained at the time of trial that Carpenter merely consigned the coach to Leisure, the record does not support that claim.

Carpenter had earlier removed the coach to Wyoming, where she lived. Apparently, Leisure was unable to pay for the Geer mobile home purchased by Carpenter until the coach was sold. In order to overcome that difficulty, Leisure and Carpenter both executed a promissory note in favor of the Lusk State Bank for the sum of $12,967. The proceeds of the loan were sent to Geer Sales to discharge Leisure's debt on the new Geer mobile home purchased by Carpenter. To secure the note, a security agreement covering both the Geer mobile home and the coach were also signed by Carpenter and Leisure and delivered to the Lusk State Bank. At the time of signing the security agreement, a manufacturer's statement of origin to the coach was delivered to the Lusk State Bank with instructions to hold it until the coach had been sold.

When the sale was completed, Leisure would instruct the Lusk State Bank to deliver the manufacturer's statement of origin to the new buyer.

In connection with the loan, Leisure wrote to the Lusk State Bank as follows: "Please be advised that on this date I have signed with Mary B. Carpenter a note and Security Agreement and Financing Statement dated December 1, 1976 in the amount of $12,967.00 for six months with your bank and the intention of this letter is to advise you that within a period of six months I will have disposed of a 1976 14' x 75' 'Chickashaw [sic] Medallion' mobile home that Mary B. Carpenter has *traded in* on the purchase of a 1976 'Geer' 14' x 70' mobile home. Mrs. Carpenter has pledged her mobile home as collateral on this note but *the responsibility for paying the principal and interest will be borne by myself or my company,* Leisure Living Mobile Homes, Inc. of Mitchell, Nebraska. As soon as a sale has been consummated on the 1976 'Chickashaw [sic] Medallion' 14' x 75' mobile home, I will immediately pay your bank in full with the proceeds from said sale." (Emphasis supplied.)

On June 6, 1977, Leisure removed the coach from Wyoming to Leisure's sale lot at Mitchell, Nebraska, where the trailer was held for resale with other trailers owned by Leisure. No sign or other notation was attached to the coach informing the public that the coach was held on consignment.

On September 30, 1977, Dealer repossessed the coach from Leisure's lot, along with two other trailers owned by Leisure. Dealer's basis for taking possession of the trailers was a claim that Leisure was then delinquent in its payment of charges due Dealer from Leisure.

On October 3, 1977, Carpenter obtained a Wyoming certificate of title to the coach and filed suit against Dealer for damages alleged to have been suffered by Carpenter by reason of Dealer's taking possession of the coach from Leisure. There is some evidence in

the record that after Dealer had taken possession of the coach from Leisure and suit by Carpenter was filed, Carpenter paid the Lusk State Bank the amount due on the note and obtained an assignment of the bank's interest. However, no claim is made in this suit that the basis of Carpenter's action arises out of any rights of the bank. Rather, the suit is based upon Carpenter's alleged right to immediate possession.

The trial court found that the coach was merely consigned to Leisure by Carpenter and, therefore, Carpenter was the owner of the property when Dealer took possession of it. Leisure and Carpenter both conceded that neither the provisions of Neb. U.C.C. § 2-326(3)(a) nor § 2-326(3)(c) (Reissue 1971) were complied with in that neither was a sign placed on the coach advising the general public that the property was held on consignment, nor was any filing made. However, the trial court specifically found that the provisions of Neb. U.C.C. § 2-326(3)(b) (Reissue 1971) were sufficiently complied with to bring the property within an exception to the Uniform Commercial Code. Section 2-326(3)(b) provides, in effect, that even though there may be no sign placed on the mobile home and even though no official filing is made, if Leisure is generally known by its creditors to be substantially engaged in selling the goods of others, its failure to place a sign on the mobile home or formally file some security document does not preclude Carpenter from maintaining that the property was held by Leisure on consignment.

Before proceeding to determine whether the trial court was correct in its determination, we must first decide whether the transaction between Carpenter and Leisure involving the coach was, in fact, a sale or a consignment. If it was a sale, Carpenter had no further interest in the coach and could not have maintained an action for conversion. The reason why Carpenter would be unable to maintain this action is apparent. The general definition of conversion, long

accepted in this and other jurisdictions, is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. *Polley v. Shoemaker*, 201 Neb. 91, 266 N.W.2d 222 (1978). Furthermore, we have held that an action for conversion is not maintainable unless the plaintiff, at the time of the alleged conversion, was entitled to the immediate possession of the property. *Jessen v. Blackard*, 159 Neb. 103, 65 N.W.2d 345 (1954). From our earliest decisions, we have continuously declared that in an action for damages alleged to have been sustained by reason of the conversion of personal property, the plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of the title of the defendant. *Holmes v. Bailey*, 16 Neb. 300, 20 N.W. 304 (1884); *Jessen v. Blackard, supra.*

Therefore, unless Carpenter was entitled to the immediate possession of the coach at the time Dealer repossessed it, Carpenter cannot maintain an action for conversion. We believe the facts of this case compel a finding that the transaction was, indeed, a sale and not a consignment and that Carpenter, therefore, was not entitled to the immediate possession of the coach, and not entitled to maintain an action in conversion.

As noted in 67 Am. Jur. 2d. *Sales* § 35 (1973), "The primary test whether a transaction in the form of an agency to sell or consignment created the relation of buyer and seller or one of principal and agent was the intention of the parties to be gathered from the whole scope and effect of the language used. The label which the parties give to the transaction [does] not determine its character, and courts [look] beyond mere labels and [examine] the contract as a whole in order to ascertain the intention of the parties."

In the early case of *Buffum v. Descher*, 1 Neb. (Unoff.) 736, 96 N.W. 352 (1901), we said that if a transferee acquires absolute dominion over the goods,

with the right to sell and dispose of goods at prices and upon terms as he sees fit, and becomes bound to pay a specified price for them, either at a specified time or upon the occurrence of a specified future event, as when he resells them, he becomes the purchaser and title thereto passes to him at once. Likewise, see, *Mack v. Drummond Tobacco Co.*, 48 Neb. 397, 67 N.W. 174 (1896); *Yoder v. Haworth*, 57 Neb. 150, 77 N.W. 377 (1898); *Wolf v. Schaben*, 272 F.2d 737 (8th Cir. 1959); *Rotterman v. General Mills, Inc.*, 245 Iowa 229, 61 N.W.2d 718 (1953).

As we keep these principles in mind and examine the facts of the case, we can reach no other conclusion except that this was a sale. The initial motive for delivering the coach to Leisure was Carpenter's purchase of a new mobile home from Leisure. Had Leisure been in a financial position to pay off the amount due on the Geer home, it would have been unnecessary for Carpenter to have executed any note with the Lusk State Bank. It is clear from the entire transaction with the Lusk State Bank that borrowing the money was for the benefit of Leisure and not for the benefit of Carpenter. The letter sent by Leisure to Lusk State Bank clearly points that out. Leisure's letter admits that the coach had been "traded in" to Leisure and that, while Carpenter's name does appear on the note, Leisure is primarily responsible for the payment and will pay the same when the coach has been sold.

The price at which the coach was to be sold and the terms under which the coach was to be sold were left solely to Leisure. From the record we have here, Carpenter had no authority or right to dictate either the price or the terms at which the coach would be sold. Furthermore, the record is totally devoid of any evidence to indicate that Carpenter could have demanded the return of the coach at any time if it were not sold by Leisure either in a seasonable time or at an appropriate price. If, for some reason, the coach were sold

for less than the amount due the bank, the letter sent by Leisure to the bank clearly indicates that Leisure would be obligated to come up with the balance. Likewise, any amount over and above that owed to the Lusk State Bank would belong to Leisure. Carpenter had no claim on either the coach or the proceeds realized from the sale of it. One is unable to see any evidence which would indicate that Carpenter believed that she was retaining any further interest in the coach except to the extent that it was security for a note at the Lusk State Bank which Carpenter had signed, along with Leisure. We believe that fact, however, is not sufficient to establish a consignment and the transaction must be considered to have been a sale. Having, therefore, determined that the transaction was a sale and not a consignment, we are further required to determine that Carpenter was not entitled to the immediate possession of the coach. To be sure, it would appear that prior to the time the coach was repossessed by Dealer, Carpenter had no right of possession in the coach. Therefore, having no right of possession, Carpenter had no right to sue in conversion. The fact that Carpenter later acquired the unrecorded security interest of Lusk State Bank is not sufficient to grant to Carpenter a basis to sue in conversion on her own behalf. Some serious question may exist of whether an action by the Lusk State Bank would even have been maintainable due to the fact that the security interest of the bank was unrecorded prior to the taking by Dealer. Be that as it may, we need not consider that issue because the pleadings in this case are not based upon any right of the Lusk State Bank, but are limited solely to a claim by Carpenter that she was entitled to immediate possession and was denied that right by Dealer. The facts do not bear that out and, therefore, the trial court was in error in entering judgment for Carpenter and against Dealer. We, therefore, reverse the decision of the trial court and remand

the matter to the trial court with instructions to dismiss the action.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

BRODKEY and WHITE, JJ., concur in result.