BRYANT HEATING & AIR CONDITIONING COMPANY, INC., APPELLANT, V. THE UNITED STATES NATIONAL BANK OF OMAHA, A CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF, GERALD M. GIDDINGS ET AL.,THIRD-PARTY DEFENDANTS, APPELLEES.

342 N.W.2d 191

Filed December 30, 1983. No. 82-815.

James B. Cavanagh of Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for appellant.

Joseph Polack of Polack & Woolley, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Bryant Heating & Air Conditioning Company, Inc., plaintiff-appellant, brought an action against The United States National Bank of Omaha, defendant-appellee, seeking to recover funds the bank credited to the account of one Gerald M. Giddings, who forged Bryant's endorsements on checks drawn payable to Bryant's order. The trial court granted the bank's motion for summary judgment and dismissed

Bryant's petition. We reverse and remand for further proceedings.

Giddings, while employed as a bookkeeper and credit manager by Bryant, carried out a scheme of embezzlement between the years 1973 and 1981 which resulted in a loss to Bryant in excess of $300,000. The central part of the scheme consisted of Giddings taking checks drawn payable to Bryant's order by its customers as payments on their accounts, placing upon the back of the checks a Bryant stamp consisting of Bryant's name and address, signing his own name below the stamp, and depositing the checks in his personal account at the bank.

Bryant discovered the scheme in March of 1981. Giddings then resigned and gave Bryant's president a $50,000 check and an assurance that the $50,000 represented the extent of his thievery. Such proved not to be the case. On March 26, 1981, Bryant filed suit against Giddings and, on that same day, obtained a writ of attachment against Giddings' property, including his personal accounts at the bank. On September 18, 1981, Giddings entered into a stipulation for judgment in favor of Bryant. The stipulation was approved and incorporated into the district court's judgment for $257,366.51 (total theft, $307,366.51 less the $50,000 payment), plus $89,528.70 in prejudgment interest. The judgment provided that all money or property obtained to satisfy it would be applied to the payment of the oldest outstanding obligation, plus interest. Bryant has collected $147,562.56 on this judgment.

The record does not reflect when Bryant filed this suit against the bank. The record does establish, however, that on May 22, 1981, Bryant filed an amended petition claiming that the bank had converted over $355,000 of Bryant's money. That petition was again amended to cover only the amount Giddings had embezzled from January 1, 1977, through March 9, 1981—nearly $207,000. Bryant then filed a motion for summary judgment or, in the al-

ternative, for partial summary judgment on the sole issue of the bank's liability to it, leaving open the question of the amount of damages which Bryant claims to be entitled to receive. The bank filed a pleading asserting that genuine issues of material fact existed and, thus, Bryant was not entitled to any type of summary judgment. The bank then moved for a summary judgment in its favor dismissing Bryant's petition on the ground that Bryant had elected its remedy by pursuing a judgment against Giddings, or, in the alternative, for a partial summary judgment reducing any liability the bank might have to Bryant by the $147,562.56 Bryant recovered from Giddings.

The trial court denied Bryant's motions for full or partial summary judgment and granted the bank's motion by dismissing Bryant's petition.

Bryant's 10 purported assignments of error merge, with one exception discussed later, into the single question of whether the trial court was correct in concluding that Bryant's suit against the bank was barred by its suit against Giddings.

To resolve that issue in the posture of this case, we are required to determine whether there here exists no genuine issue as to any material fact, whether the ultimate inferences to be drawn from those facts are clear, and whether the bank is entitled to judgment as a matter of law; for it is only under such circumstances that summary judgment may properly be granted. *McFarland v. King, ante* p. 92, 341 N.W.2d 920 (1983); *Butte State Bank v. Williamson,* 215 Neb. 296, 338 N.W.2d 598 (1983).

The bank cites us to *Jones v. First Nat. Bank of Lincoln,* 3 Neb. (Unoff.) 73, 90 N.W. 912 (1902), as dispositive of this appeal. Therein, Willard E. Stewart fraudulently obtained the signature of John T. Jones on a check drawn upon Jones' account at the defendant bank. After discovering the fraud Jones succeeded in obtaining a civil judgment against Stewart. He then sued the bank, alleging that the

funds had been wrongfully paid. The trial court directed a verdict for the bank. On appeal this court stated: "Having elected to treat the check as valid and the payment to Stewart as authorized thereby, he can not afterwards assert the contrary position. Either Stewart had his money or the bank had it. Both could not have it. If the bank had the money, Stewart had the bank's money; and he was not liable to Jones, but to the bank. If Stewart had Jones' money, it was because the bank had paid it out on Jones' check, and the bank was no longer holden for the deposit. . . . Looking at this suit as one based upon payment of the altered check, the two are entirely inconsistent." *Jones* at 79, 90 N.W. at 914.

The bank characterizes the *Jones* rule as a facet of the election of remedies doctrine and contends that it is the majority rule. It cites us to cases from several jurisdictions which embrace it, *Winn v. National Bank of Athens*, 110 Ga. App. 133, 138 S.E.2d 89 (1964), and *V. H. Juerling & Sons, Inc. v. First Nat'l Bank*, 143 Ind. App. 671, 242 N.E.2d 111 (1968), and urges us to apply it to the present situation. On the other hand, Bryant asks us to overrule *Jones* and accept the reasoning of those jurisdictions which have rejected the automatic application of the doctrine of election of remedies to bar a subsequent suit against a bank by its depositor. *Hennesy Equipment Sales Co. v. Valley Nat. Bank*, 25 Ariz. App. 285, 543 P.2d 123 (1975); *First National Bank of McAlester v. Mann*, 410 P.2d 74 (Okla. 1965).

We reject both invitations. The bank asks us to transplant the *Jones* rule from the ground in which it is rooted to virgin soil; it cites no case wherein the *Jones* rule has been applied to bar recovery by the true owner of a negotiable instrument from a non-payor depositary bank which dealt with the thief. In *Jones* the bank was sued by its own depositor. The rationale adopted in the *Jones* opinion is not applicable to the situation in the instant case, for Bryant had no account with the bank. Therefore, Bryant's

suit against Giddings could not carry with it the concept that the bank had rightfully paid out Bryant's funds. Here, Bryant is the victim of an embezzlement, which, after seeking satisfaction from the embezzler and not finding enough assets to satisfy its judgment, seeks to go after the embezzler's bank for cashing its checks on forged endorsements.

*Jones* does not hold that one who pursues one wrongdoer to judgment may not thereafter pursue a second wrongdoer. It rests, rather, on the ground that Jones, as the bank's depositor, obtained his judgment against the wrongdoer Stewart on the basis that the check was valid and authorized the bank to pay, but which was fraudulently obtained from Jones by Stewart. Jones could not thereafter maintain the inconsistent position against the bank that the check was invalid and therefore did not authorize payment.

The doctrine of election of remedies appears to be a somewhat vague notion lying somewhere between the areas occupied by the doctrines of equitable estoppel and res judicata. "The doctrine of election of remedies is largely a rule of policy to prevent vexatious litigation, and is widely recognized both in the federal and state courts. It is based on the rule that a party cannot, either in the course of litigation or in dealings in pais, occupy inconsistent positions, or proceed on irreconcilable claims of right; in other words, that a man shall not be allowed to approbate and reprobate. It has been said that the doctrine is a harsh rule which is not to be extended, and that it is to be applied by the courts with a wide discretion in order that it may not be made an instrument of oppression." 28 C.J.S. *Election of Remedies* § 1 at 1058-59 (1941).

We have dealt with the election of remedies doctrine on a number of prior occasions. In *Asher v. Coca Cola Bottling Co.*, 172 Neb. 855, 112 N.W.2d 252 (1961), a case involving a suit against a soft drink bottler after a consumer discovered a dead mouse in

the bottle he had just drunk from, we stated: " 'Before a case can arise for the application of the principle of election there must be (1) two co-existing remedies; and (2) those remedies must be so inconsistent that a party can not logically choose one without renouncing the other.' " *Id.* at 861, 112 N.W.2d at 256. This rule was restated in *Kenyon & Larsen v. Deyle*, 205 Neb. 209, 286 N.W.2d 759 (1980). The doctrine is frequently applied in cases in which the existence of a contract is alleged, damages for its breach are sought, and in a subsequent action rescission of the contract is sought. *Russo v. Williams*, 160 Neb. 564, 71 N.W.2d 131 (1955); *Majerus v. Santo*, 143 Neb. 774, 10 N.W.2d 608 (1943); *Pollock v. Smith*, 49 Neb. 864, 69 N.W. 312 (1896). The bases of these decisions are that the relief and facts necessary to prove the right to the relief are inconsistent.

The bank argues that the relief sought by Bryant and the facts alleged in Bryant's suit against Giddings are inconsistent with the relief requested and the facts alleged in Bryant's suit in the case at hand. This is not so. In its petition against Giddings, Bryant alleged that Giddings had converted checks belonging to Bryant and applied the proceeds to his own use. In the present case Bryant alleges that the bank converted checks belonging to Bryant. These are not inconsistent allegations. Two parties can convert the same property if both wrongfully exercise dominion over it which is inconsistent with the rights of the true owner. *Allen v. Dealer Assistance, Inc.*, 207 Neb. 455, 299 N.W.2d 744 (1980); Restatement (Second) of Torts §§ 222 A, 229 (1965). A negotiable instrument can be the subject of conversion. *State v. Omaha Nat. Bank*, 59 Neb. 483, 81 N.W. 319 (1899). See, also, Neb. U.C.C. § 3-419 (Reissue 1980).

Furthermore, the bank seems to propose that either Giddings or itself must have converted the checks, not both of them. This also is an erroneous proposition. One who takes possession of the per-

sonal property of another by purchase from a person having no authority from the true owner to dispose of it commits conversion. *Burns v. Commonwealth Trailer Sales*, 163 Neb. 308, 79 N.W.2d 563 (1956). In *Paxton v. State*, 59 Neb. 460, 81 N.W. 383 (1899), a case involving a suit by the State against the surety of the State Treasurer who had wrongfully paid state funds to a bank holding void state warrants, this court stated that both the State Treasurer and the bank were tort-feasors, and the State could sue both or either of them.

The bank further contends that unless Bryant's suit is barred, it will recover its damages twice. Such a claim has no basis. Several actions may be brought and several judgments recovered against several wrongdoers, although but one satisfaction can be had. *Tober v. Hampton*, 178 Neb. 858, 136 N.W.2d 194 (1965). The partial payment of a judgment against one of several wrongdoers is not a satisfaction which will prevent the maintenance of an action against another. *Lovejoy v. Murray*, 70 U.S. (3 Wall.) 1, 18 L. Ed. 129 (1865); Restatement (Second) of Judgments § 50 (1982); 74 Am. Jur. 2d *Torts* § 86 (1974). Should Bryant recover a judgment against the bank, all that is necessary is that the trial court credit the bank with the appropriate amount, if any, of the recovery made by Bryant on its judgment against Giddings.

Additionally, the bank urges that it is prejudiced by the stipulation of judgment entered into by Giddings and Bryant whereby any amounts recovered by Bryant in enforcing its judgment were applied to the oldest checks embezzled. This claim is also without merit. It is true that the parties to an action are ordinarily bound by the terms of certain types of stipulations they voluntarily make. *State v. Wells*, 197 Neb. 584, 249 N.W.2d 904 (1977). The bank, however, was not a party to the stipulation in question and therefore cannot be bound by it. The trial court would be obligated to make its own determination on

all questions of law involved in the instant case. *Elrod v. Prairie Valley*, 214 Neb. 697, 335 N.W.2d 317 (1983); *Staley v. City of Blair*, 206 Neb. 292, 292 N.W.2d 570 (1980).

Bryant also urges as error the overruling of its alternative motions for full or partial summary judgments. On the other hand, the bank asks us to rule on its alternative partial summary judgment motion for limitation of damages, should we disturb the district court's ruling on its full summary judgment motion. With respect to the bank's request the granting of one alternative summary judgment includes the implicit denial of another alternative motion. The denial of a motion for summary judgment is not a final order and therefore is not appealable to this court. *Cockle v. Cockle*, 215 Neb. 329, 339 N.W.2d 63 (1983); *Randall v. Erdman*, 194 Neb. 390, 231 N.W.2d 689 (1975). That being so, we have no jurisdiction to consider the overruling of any of the motions for either full or partial summary judgments.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.