WILLIAM H. BERTHOLF

*v.*

QUINLAN BROS. & Co.

1. TROVER—*when it lies*—*conversion.* If a person is in the possession of the property of another, claiming it as his own, under a contract by a

title adverse to that of the owner, the latter, after demand and a refusal, may maintain trover.

2. SAME—*right in plaintiff necessary to maintain.* The plaintiff in trover must show that he has either a general or a special property in the thing converted, and the right to its possession.

3. Where the plaintiff's agent traded a lot of whiskey for a piano, with the defendant, upon condition that his principal should approve the bargain, and delivered possession of a part of the whiskey, and the principal repudiated the exchange, and demanded the whiskey of the defendant, which he refused to deliver, claiming that the exchange was an absolute one: *Held,* that the plaintiff might maintain trover for the same.

4. AGENCY—*transfer without authority—agent's liability to principal does not make sale good.* Where an agent exchanges the property of his principal without authority, the fact of his liability to the principal will afford no ground for defeating an action of trover brought by the principal against the party receiving the same from the agent, or release his liability to the owner after his refusal to deliver the same on demand.

5. SAME—*authority by previous ratification of similar acts.* The fact that the principal of an agent to collect claims had, on two prior occasions, sanctioned payments to the latter, in a pipe and in a watch and chain, by charging the same to the agent's account, will not bind the principal to a sale of his property for a piano, made without authority, especially where the principal repudiated it on the next day, and as soon as advised of it.

6. In this case, the plaintiff's agent to collect debts for liquor sold, found the debtor unable to pay, and that he had mortgaged the liquor to a third party, who refused to give it up unless paid his demand. The agent, for the purpose of securing his principal's interest, agreed to take back the liquor, and drew a draft on the principal for the amount due the mortgagee, and procured the defendant to indorse the same, and afterwards sold the liquor to the defendant for a piano, subject to the ratification of the principal, and telegraphed his principal of the fact, who immediately after repudiated the sale, and refused payment of the draft. Upon learning the facts as to the draft, the principal tendered the amount of the same to the defendant, and demanded the liquor then in his possession. He refused to deliver the same, claiming it under the contract with the agent. The principal then brought trover for the same. It was insisted that by dishonoring the draft he repudiated the act of his agent in taking the liquor for his debt, and therefore had no right to maintain the action: *Held,* that as the principal was not informed of the facts upon which the draft was drawn, he was not concluded by his dishonoring the same from claiming the liquor.

7. EVIDENCE—*affidavit of jurors.* It is the settled doctrine of this court that an affidavit of a juror can not be received to impeach a verdict.

APPEAL from the Circuit Court of Marion county; the Hon. SILAS L. BRYAN, Judge, presiding.

Mr. HENRY C. GOODNOW, and Mr. W. R. HUBBARD, for the appellant.

Mr. B. B. SMITH, for the appellees

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of trover, in the Marion circuit court, for six barrels of whiskey, and verdict and judgment for the plaintiff.

To reverse this judgment the defendant appeals, and makes the point that the action is misconceived—that trover is not the appropriate remedy, as appellant obtained possession of the property under color of a contract, and that if the action could be maintained it should be brought in the name of Cramer.

To understand the force of this objection, it is necessary to state, that appellees were a firm, doing business in St. Louis, Cramer being a traveling agent to solicit orders and make collections, and to sell goods for cash.   A part of the whiskey in question had been sold by appellees to one Lynch, doing business at Kinmundy, for which, and on other accounts, Lynch was indebted to appellees four hundred dollars.   Lynch had purchased other whiskey of another house, and had mortgaged it to one Haworth, to secure two hundred dollars. Cramer applied to Haworth to release his mortgage on a part of the whiskey, which being declined he agreed to release it on the whole lot, if Cramer would pay his claim.   This Cramer concluded to do, and drew on appellees at St. Louis for two hundred dollars.   This draft was indorsed by appellant, and cashed at the Kinmundy bank, and the proceeds paid over to Lynch, who, thereupon, released his claim on the property.

Appellant claims, that on this being done he purchased the whiskey from Cramer, giving him therefor a piano. It is claimed by appellant, and he so testified on the trial, that the sale was absolute and unconditional, whilst appellees insist the exchange was made by Cramer, subject to their approval —and so Cramer testifies. It is in proof that appellees, when notified by Cramer of the trade, promptly repudiated it, and soon afterwards made a demand upon appellant to deliver up the whiskey, which he refused.

There are facts proved, tending to show this trade for the piano was an absolute sale, but the jury have found there was sufficient evidence to show a conditional trade only—a trade subject to the ratification of appellees; and we can not say they have given undue weight to the testimony leading to such a conclusion. All the facts were before the jury, and we can not say they have found against them.

As to the legal proposition, we understand the rule to be, if a person is in possession of the property of another claiming it as his own under a contract, by a title adverse to that of the owner, the latter, after demand and refusal, may maintain trover. The plaintiff in such action must show that he has either a general or a special property in the thing converted, and the right to its possession.

As to the instructions, we think they fairly stated the law to the jury, and though some of them may not possess entire legal accuracy, they could not have misled the jury. For the appellant these instructions were given:

"The court instructs the jury, that if you believe, from the evidence, that Cramer had authority to sell the whiskey in question to the defendant, and if you further believe, from the evidence, that Cramer did so sell the whiskey to Bertholf, and deliver the whiskey to him, then the trade is complete, and the title to the whiskey rests in Bertholf, and the title can not be diverted, except by a failure of the conditions on the part of Bertholf, and you should find for the defendant.

"The court instructs the jury, for the defendant, that if you believe, from the proof, that Cramer was the general agent of the plaintiffs, and that Cramer, in former transactions, had sold the defendant whiskey and taken property of defendant in pay or part pay for the same, and that plaintiffs had settled with defendant, recognizing the payment in property as good, then the defendant has a right to trade property for whiskey, and the plaintiffs are bound thereby, unless you find the sale was made in this case subject to the approval of the plaintiffs.

"The Court instructs the jury, that if you believe, from the proof, that Cramer took the whiskey from J. C. Haworth and W. R. Lynch, as the property of Cramer, and that Cramer sold the whiskey to defendant, then you should find for defendant.

"That, in order for a tender to be good, it must be for the whole amount paid by defendant; and if the jury believe, from the evidence, that the tender was less than the amount paid by the defendant, then it was no good tender, and you should find for defendant.

That if you believe, from the evidence, that the plaintiffs, through their agent, A. W. Smith, exercised any acts of ownership over the piano that was to be paid for the whiskey, then it may be considered by the jury, in passing on the ratification of the trade."

Those given for the plaintiffs were as follows:

"That an agent for the sale of goods and to collect bills does not authorize the agent to trade for barter; and if you believe, from the evidence, that Cramer took the whiskey in collection of the Lynch debt due plaintiffs, and that Cramer traded the whiskey for a piano, and such trade was out of the scope of his authority, and this was known to defendant at the time, then such sale did not bind plaintiffs.

"That if you believe, from the evidence, that plaintiffs. by their agent, bought the whiskey of Lynch, and that the agent

traded it to defendant for a piano, then the plaintiffs are not bound by such trade, if you believe, from the evidence, that Cramer went beyond his authority, and such act was known to defendant, as an agent of plaintiffs, in trading for the piano, unless the plaintiffs ratified the trade for the piano.

"That if you believe, from the proof, the whiskey belonged to plaintiffs at the time the suit was brought, and that they demanded the whiskey before the suit was brought, and the defendant refused to give it up, you should find for plaintiffs the value of the whiskey.

"That plaintiffs are not bound by the acts of Cramer, unless you believe, from the proof, he acted within his authority and agency, or his acts were approved of by plaintiffs. That if Cramer was acting for plaintiffs in taking the whiskey, merely this did not authorize him to sell the whiskey for a piano, and the sale for the piano would not bind the plaintiffs unless the sale for the piano was within the scope of his authority, or was afterwards ratified by plaintiffs."

These instructions were refused appellant :

"The court instructs the jury, that if you believe, from the evidence, that Cramer was responsible to plaintiffs for the goods sold to Lynch by Cramer, as agent of plaintiffs, then you should find for defendant.

"That if you believe, from the evidence, that plaintiffs ratified the contracts made by the agent, Cramer, when he exceeded his authority, when, for their benefit, these persons had a right to treat Cramer as a general agent, they would be bound by the contracts of Cramer, and if injured would have to look to their agent, Cramer, for relief.

" That if you believe, from the evidence, that plaintiffs refused to pay the draft, that was a repudiation of the transaction of Cramer with Lynch ; and if you further believe, from the evidence, that plaintiffs knew the whole contract made by Cramer with Lynch, then plaintiffs can not, after-

wards, resuscitate the contract with Lynch, without Lynch's consent; and if plaintiffs have not proved that Lynch did again consent, you should find for defendant."

It was not material to the inquiry what might have been the responsibility of Cramer to his employers. That could not release appellant from his liability to appellees, should the jury be satisfied from the evidence that the goods belonged to appellees, and appellant had refused to deliver them upon demand.

The next instruction has reference to some proof in the cause, that, in a previous transaction between appellant and appellees, the latter had sanctioned a payment made by appellant to Cramer, by delivering him a meerschaum pipe, worth fifteen dollars, and at another time a watch and chain, worth seventy dollars. These articles were charged to Cramer by appellees in their account against him, as cash, and in that manner sanctioned by appellees. It does not follow, because appellees sanctioned these small transactions, they were obliged to sanction one like this, which they show they expressly repudiated on the next day after its occurrence, and so soon as they were advised of it by Cramer.

The last one omits an important element: a knowledge of the facts on which the draft was drawn. When appellees were informed of the facts on the same or the next day, they promptly remitted the two hundred dollars, the amount of the draft, which was tendered to appellant, and which he refused to accept.

The remaining point is the refusal of the court to set aside the verdict on the affidavit of Switzer, one of the jurors who tried the cause.

It is the settled doctrine of this court, that an affidavit of a juror can not be received to impeach a verdict. The point is not argued by appellant, and in view of the affidavits of three other jurors, it is believed he does not rely upon it.

. All the facts having been fully considered by the jury, and on a careful examination of the record, we can not say they have decided against the right, and must affirm the judgment.

*Judgment affirmed.*