| 90 | 515 |
|---|---|
| 113 | 6 62 |

## Allen Newlin and Stephen D. Newlin, Partners, etc., et al., v. Charles Prevo.

1. DELIVERY—*Of Deeds—Acceptance.*—The delivery of a deed is essential to its execution. Mere manual possession of it by the grantee is not necessarily an acceptance, and an acceptance is just as necessary to pass the title as a delivery by the grantor.

2. CONTRACTS—*The Minds of the Parties Must Meet.*—It is a requisite of all contracts that the minds of the contracting parties must meet and assent to the same thing, in the same sense and at the same moment of time.

3. CONVERSION—*Defined.*—A conversion is a positive, tortious act, which deprives a person of his property permanently or for an indefinite term.

4. SAME—*Demand and Refusal, Evidence of.*—Demand and refusal are evidence of a conversion when the defendant is in such a condition that he can deliver the property if he will.

5. SAME—*Mere Non-feasance Not of Itself Sufficient to Maintain Trover.*—Mere non-feasance or neglect of some legal duty will not suffice to maintain trover, although it may constitute sufficient cause to maintain an action on the case.

6. TROVER—*Requisites of the Action.*—In order to maintain an action of trover the plaintiff must have had possession of the property claimed to have been converted, or the right to immediate possession.

7. SAME—*When the Action Will Not Lie.*—Trover will not lie unless there has been a tortious conversion of the property in dispute. Mere non-feasance or mere refusal to fulfill a contract will not warrant the action.

8. TENDER—*What is Not Valid as.*—The party to whom a tender is made must be allowed sufficient opportunity to examine and determine what is tendered. It is not a valid tender of a thousand dollars to offer a package of bills, saying it contains a thousand dollars, without allowing the party to whom the tender is made, an opportunity to examine it for the purpose of ascertaining if the bills are genuine, and if it contains the amount stated, of legal tender money.

9. SAME—*Of Specific Articles of Property.*—When specific articles of property are tendered they must be set apart, so that the party to whom they are tendered may know exactly what is tendered.

Trover.—Appeal from the Circuit Court of Crawford County; the Hon. ENOCH E. NEWLIN, Judge, presiding. Heard in this court at the February term, 1900. Reversed and remanded. Opinion filed September 8, 1900.

Statement.—This is an action in trover, brought by appellee, charging appellants with the conversion of a stock of goods in the village of Hutsonville. The suit was originally brought against Allen Newlin and Stephen Newlin, resulting in a verdict against them for $3,000, which, on their motion, was set aside and a new trial granted. Plaintiff then amended his declaration, making Simpson Raines, Edward Raines and Morton Raines, partners under the firm name of M. Raines & Co., co-defendants. The amended declaration contains three counts, the first count alleging possession by plaintiff of a stock of dry goods, etc., finding and conversion by defendants, and damage to plaintiff of $5,000. The second count alleges possession by plaintiff, loss of goods, finding by defendants, demand for possession, and refusal, etc. The third count alleges an ownership and possession by plaintiff; that in his absence from the store-room, where the goods were located, defendants unlawfully took possession of the goods, etc.; demand for goods, refusal, and conversion of goods by defendants.

Defendants plead not guilty.

Verdict and judgment for plaintiff for $4,201.03.

New trial and motion in arrest of judgment overruled, and exceptions taken.

At the close of plaintiff's evidence, and again at the close of all the evidence, motions to instruct the jury to find for defendants were made and overruled and exceptions taken.

The assignments of error are the usual assignments as to the admission and exclusion of evidence, giving, refusing and modifying instructions, verdict against the law and evidence, and error in not granting new trial.

The suit grows out of the following transactions:

On the 21st of January, 1898, appellants, M. Raines & Co., and Charles Prevo, appellee, made the following contract:

"HUTSONVILLE, ILL., Jan. 21, 1898.

This agreement, made and entered into by and between Charles Prevo, of West Union, Ill., and M. Raines & Co., of Hutsonville, Ill., this twenty-first day of January, 1898, witnesseth: That Charles Prevo has purchased the general stock of goods of said M. Raines & Co. at the market price of said goods, and pays therefor a piece of land situated in Clark county, Ill., and described as follows; South ½ of N. E. ¼ of Sec. 22, Town 9, Range 11, West, containing eighty acres. Said piece of land is put in at the valuation of forty-eight hundred dollars; balance of inventory, amount payable in cash. The amount of the inventory value over forty-eight hundred dollars, if paid in cash, is subject to a discount of twenty-five per cent on the amount in excess of forty-eight hundred dollars. M. Raines & Co. agree to turn over the stock of goods and all fixtures and appurtenances thereunto belonging to the store building, free from incumbrance of any kind, on the completion of the inventory and compliance with the terms of this agreement by the said Charles Prevo. And it is agreed by and between the said Charles Prevo and M. Raines & Co., that an inventory of said stock and appurtenances shall be taken next week, commencing Monday morning, or as soon thereafter as possible.

CHAS. PREVO,
M. RAINES & Co."

Pursuant to this contract an invoice was taken. It began

on the Monday following, being January 24th, and was completed in the afternoon of Saturday, January 29th. The invoice amounted to $4,201.03. While the goods were being invoiced an abstract of title to the land described in the contract was asked for by Raines & Co. Appellee said that his contract did not obligate him to furnish an abstract. He said, however, that he had an abstract, and that he had no objection to the Raines looking over it. After the completion of the invoice on Saturday afternoon, Simpson Raines, Ed Raines and Prevo went to the office of Musgrave, a justice of the peace, who had a deed already executed by Prevo and his wife for the land. Ed Raines took the deed and went out of the office to have it examined. Prevo and Simpson Raines remained in the office until Ed Raines returned. He objected to the deed on account of the word "forty" being spelled "fort," and the addition of the words "more or less" after the word "acres." Thereupon Prevo took back the deed and agreed to have another deed drawn. The second deed, signed by Prevo and his wife, was presented to Allen Newlin in the presence of the Raines and Stephen Newlin, to be acknowledged. This was on Saturday night, and at the same time, and for the first time, the abstract was produced and taken for examination by Stephen Newlin, who, with Allen Newlin, was acting as the legal adviser of Raines & Co. This transaction took place at the banking house of Newlin Brothers, which was in the same building as the store of Raines & Co. Prevo asked Allen Newlin, who was a notary, to certify to the acknowledgment of the deed. Newlin refused to do so until the abstract had been examined. Thereupon Prevo picked up the deed and took the abstract from the hands of Stephen Newlin, declaring that he would get the deed acknowledged elsewhere, and left the bank. The parties to the contract did not again meet on this Saturday, but on Monday following Prevo tendered another deed to Raines & Co., and they refused to accept it. The land was not in the county where this transaction took place. At this time the abstract did not show title in

Prevo, the deed to him not being on record when the abstract was made; nor is it shown by the evidence that Prevo produced the deed which purported to convey title to him, nor that Raines knew of the existence of such a deed. Upon this point, in answer to the question, " Did you have a deed from Mrs. Root at that time? did you present it or show it to these parties at the time you tendered the deed?" Prevo answered, " I don't know as I did; I don't remember whether I did or not." As further bearing on the transaction relating to the delivery of this stock of · goods, it is in evidence that Atwood, who had been in the employ of Raines as their clerk, after the invoice, in connection with Musgrave, was directed by Prevo to arrange the goods. Atwood does not say that Prevo made this direction in the presence of the Raines, although he says that the Raines were in and out of the store while the direction was being carried out. Atwood further states that during the invoice he was working for the Raines; that when completed he hired out to Prevo to work for him. Simpson Raines testifies that Atwood was arranging the goods under his direction. Atwood further testifies that on Saturday, the day on which the invoice was completed, Ed Raines came to the store and directed him to close it and give the keys to him (Raines), both of which he did. It is also shown that during Saturday afternoon, after the invoice had been completed, Simpson Raines talked about renting the land that he had traded for, and that he said that the land was so far away that he did not believe he could keep it.

There is also the testimony of the Newlins and Ed Raines, Simpson Raines and George Raines, that on Saturday night Prevo declared that if the Raines did not turn over the stock of goods that evening he would not have the goods, but would sue Raines & Co.

The defendants claim that they were justified in refusing to complete the contract of January 21st. They also introduced evidence to the effect that they told Prevo if he would make good title to the land, or that if he would

deposit money in the bank to make it good, if it was not good, they would turn the goods over that night.

CALLAHAN, JONES & LOWE and JONES, EAGLETON & NEW-LIN, attorneys for appellants.

C. S. CONGER and BRADBURY & MACHATTON, attorneys for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

This is an action in trover for a stock of goods claimed to have been purchased by appellee from Raines & Co., co-appellants with the Newlins. Each count in the declaration avers that appellee was in the possession of the goods, with the usual allegations of conversion by defendants. If appellee acquired possession, it was on Saturday after the taking of the invoice. If he was in possession, conversion is sufficiently proved, and the judgment should be affirmed. Possession, then, is one of the material issues in the case. But while this is an important issue, the record shows that the case was also tried upon the right of appellee to immediate possession, by virtue of a tender of a deed for the land. Upon which of these issues the jury found for appellee, this court can not determine. Appellants' plea denies both possession and the right to possession. If an examination of the evidence and the law applicable thereto fails to show a right to immediate possession by reason of a tender of the deed, then in order to affirm the judgment, the evidence must sustain the verdict upon the issue that appellee acquired actual possession before conversion by appellants. If a deed was delivered to Raines & Co., and possession was given by them to Prevo, both occurred on Saturday, after completing the invoice. By inspecting the contract, it will be seen that it is a contract of sale, and not a contract to sell. The language is that "This agreement witnesseth * * * that Charles Prevo has purchased the general stock of goods of M. Raines & Co., * * * and

pays therefor a piece of land," etc. Delivery was to follow the invoice and a compliance by Prevo with the terms of the contract. This compliance required the payment of the piece of land described in the contract.

As between the parties, delivery was not essential to constitute a sale, but payment of the land was a condition precedent to Prevo's right to possession. This payment could only be made by the execution of a deed by Prevo's conveying a valid title to the land. The delivery of a deed is essential to its execution. Mere manual possession of a deed by a grantee is not necessarily an acceptance of the deed, and acceptance by the grantee is just as necessary to pass title as delivery by the grantor. A deed was tendered at Musgrave's office on Saturday afternoon, after the completion of the invoice. It is clear from the evidence that neither Prevo nor Raines & Co. considered that this deed passed the title. It is true that Prevo handed this deed to Ed Raines, but after examining it, Raines returned it to Prevo, objecting to the word "fort" instead of "forty," and to the phrase "more or less" after the description of the land. Prevo took back the deed and said he would have another prepared. This he did, and in company with his wife, met Raines & Co. at the Newlin bank that Saturday evening. This deed was not acknowledged. Allen Newlin, a notary, who, with his brother, Stephen Newlin, were the legal advisers of Raines & Co., refused to take the acknowledgment until the abstract of title had been examined. This abstract, upon the request of Raines & Co., Prevo, on the previous Wednesday, had promised to produce. He did not furnish it until Saturday evening. This was the first opportunity given for its examination. Before it could be examined, Prevo took it out of the hands of Stephen Newlin, who had it for examination, and taking the deed, left the bank. The parties did not meet again that evening. There was then no delivery of this second deed on Saturday. On Monday Prevo tendered still another deed (testimony of Mahlon Musgrave for appellee), thus showing that he did not then consider

that he had already deeded the land. It is important to note this non-delivery of a deed on Saturday, as bearing upon the issue of the possession of the goods on that day. The action of both parties shows that they regarded the conveyance of the land as a condition precedent to the right of possession by Prevo. If both parties considered that no deed was delivered on Saturday, it follows that both parties considered that no right of possession to Prevo had then accrued. If both parties, at that time, so regarded the situation, it is not likely, in the condition of mind which the evidence shows that both parties were then in, that a surrender of possession of the goods would have then been made.

There are other circumstances in evidence that are inconsistent with Prevo's claim that he had possession on Saturday. Raines. & Co. rented the store building from one Hussong. Prevo, by correspondence, rented it from Hussong, to take possession when Raines & Co. vacated. On Saturday Prevo employed carpenters to make changes in the building. When Simpson Raines came in, and saw what was being done, he stopped the carpenters in their work, thereby showing that he considered that Raines & Co. were still in possession. The evidence does not disclose any protest by Prevo against this interference by Raines & Co.

After closing the store on Saturday evening, after the meeting at the bank, Raines & Co. called upon Atwood, who had been a clerk in their employ, and who had assisted in taking the invoice, for the key to the store. He gave it to them and they locked the store, and held possession of it until they transferred the stock to the Newlins on the succeeding Monday. The declarations of Prevo in evidence, made on Saturday afternoon and evening, are also inconsistent with his claim of possession. These declarations are testified to by five witnesses. The declarations are in substance that Prevo said that if the goods were not turned over that night he would not have them, but would bring suit on the contract. Simpson Raines testifies that " he

(Prevo) said he would not have the goods if he did not have them that evening (Saturday) and would sue on the contract—would sue for $4,000."

George Raines, who was not one of the partners of Raines & Co., testified that Prevo said, " If the goods were not turned over that evening he would not have them at all, but would sue them for the land; that he would rather have that than anything."

Allen Newlin testifies as to what took place previous to Saturday:

" I got a copy of contract. Raines & Co. had asked me to look after their part of the business and examine title. I think I told Prevo. Prevo said he had abstract, but not here. I told him he had better get it down here. I asked him if the abstract showed good title. Prevo said, ' There's no abstract but what an attorney can pick flaws in it.' I told him Raines did not understand contract like he did, and were dissatisfied, and if his abstract wasn't good or he didn't have good title, they wouldn't take the land and the trade wouldn't be finished up. He said, ' Well, if that's all you've got to talk about, I'll go back to work. I don't care if I get these goods or not. I've got a contract of sale, and if I don't get the goods, if they don't want to turn them over to me when we get through, I'll just make them pay the contract price for the land, forty-eight hundred dollars;" and went out.

As to what took place at the bank Saturday evening, he testifies:

" We all met at the bank to examine abstract and finish trade that evening. He wanted me to acknowledge the deed. I told him to wait till we got through examining the abstract first. He remarked, we wouldn't know anything about the abstract if we looked at it; nobody but a good lawyer would know anything about the abstract; he said, ' If you don't acknowledge that deed, I will get another notary,' and grabbed the abstract out of Stephen's hands and went out with it. My brother was authorized to say what would be done with the deed. He asked Prevo if he refused to let the deed be examined. Said he didn't have to furnish an abstract and wouldn't do it.

" Prevo repeated at that time that he didn't want the goods anyhow and if they didn't turn the goods over that night

he wouldn't take them at all. He said all he had to do was to make a warranty deed. My brother said, ' This contract says you are to pay a piece of land, and these people want to know if you are able to pay the land before they accept the deed or turn over the goods.' Prevo said that he didn't have to show title and wouldn't. Stephen says, ' The trade is off; that is the end of it.' That is the substance of the conversation. I don't pretend to give the exact words. Prevo went out and Raines went out."

Edward Raines testifies:

" After we got done invoicing, Prevo says, 'We want to close up this contract;' and I said, ' Charley, the parties interested have authorized me to ask you to furnish an abstract. We are ready to comply with our part of the contract when you furnish us an abstract of title to the land.' He said, ' I didn't agree to furnish one.' We talked on. He said, ' If you don't turn the stock of goods over to me this evening, I'll sue you.' I told him if he would give us good title we would turn over the goods at once; all we asked was for him to make us good title; and he said he wouldn't do it. I said, ' Furthermore, Charley, if you'll put the money in the bank to a certain amount to make the land good if the title is not good, I will accept your deed now and turn over the stock to you;' and he got up and left."

And again testifies as to what took place at the bank:

" The abstract was given to Steve Newlin in the bank and the deed handed to Allen Newlin to acknowledge. They commenced examining the abstract. Prevo said he was in a hurry, and 'if you are going to acknowledge that deed, I want you to do it, and if not, I'll take it to some one else.' They said, ' If you want to go to some one else, that's all right.' He got the deed and took the abstract out of Steve's hands. Steve says, ' Do you refuse to allow us to examine the abstract? We have been asked to help look after this thing,' and told him if he didn't let him examine the abstract, the trade was off.' I don't know anything about an abstract, and father don't; and whatever Steve said about it would have been all right. Prevo left abstract in Stephen's hands two or three minutes. Prevo said, ' How do you know anything about an abstract if you would see it? It takes a good lawyer to examine an abstract.' Steve said, ' I give you to understand if I examine an abstract I can tell whether it's right

Newlin v. Prevo.

or wrong.' Newlin didn't have time to examine abstract; not first page, let alone the rest. Up to that time I had no idea that trade would not go on."

Stephen Newlin testifies:

" Had my first conversation with Prevo about land Saturday night at the bank. I had been selected to look after the Raines' interest. Simpson Raines handed me abstract and said to examine it and decide the matter. I took abstract, began to examine it, and hadn't got half way down the first page when Prevo asked Allen to take acknowledgment to deed. My brother wanted to examine abstract first, and if everything was all right he would. Prevo said, ' I've no time for the abstract to be examined now.' Allen says, ' It won't take long.' Prevo says, ' I'm in a hurry;' and says to me, ' You wouldn't know anything about an abstract anyway,' and jerked it from my hands; and I said, ' Mr. Prevo, I would know all about it when I read it over.' He says, ' Well, I don't have to furnish an abstract anyway.' Prevo said: ' I'm ready for a suit anyway, and if they don't turn over these goods to-night I'll sue them.' I said, ' Now Charley, you've said a right smart the last few days about suing these people, from what I learn. They have their rights, and they want to know they have good title to the land. You produced this abstract, and I want to examine it. Will you let me examine it?' He said ' No;' and I said, ' Do you refuse to let me examine this abstract?' He said, ' Certainly;' and then I said, ' Then that is the end of this transaction; the trade is off.' He went out and took the abstract along."

These statements of Prevo are inconsistent with his claim to possession of the goods on Saturday. They were made at different times and are not contradicted.

To constitute delivery of the deed and surrender of the goods, the minds of Raines & Co. and of appellee must have met. There must have been an intention to deliver the deed on the part of Prevo, and to accept it on the part of Raines & Co. There must have been a mutuality of intent, coupled with an actual surrender of possession of the goods.

" It is a requisite of all contracts that the minds of the parties must meet, and assent to the same thing in the same

sense, and at the same moment of time." Smith on Personal Property, Sec. 99.

The evidence not only fails to show such an agreement, but does affirmatively show the absence of an agreement. Such being the case appellee can not recover in trover, upon the ground that he had delivered his deed on Saturday, or that he was in possession of the goods on Saturday. The proof must correspond with the allegations. Am. & Eng. Ency., Vol. 26, p. 812.

Appellee insists also upon a right to recover on the ground that he offered to comply with the terms of the contract and thereby had a right to immediate possession of the property.

The declaration is not based upon this theory. But as the case has been tried both upon the theory of appellee's having been in possession, and if not in possession upon his right to immediate possession, we will consider it also upon this latter theory.

If the evidence proves such facts as authorize a recovery upon this theory, the case may be affirmed, although it is not the case made by the pleadings. Such facts are as follows: First, a tender of payment for the goods. Second, a demand for delivery and refusal to deliver. Third, the keeping of the tender good by depositing in court for delivery to Raines & Co., a deed conveying the land to them. Melton v. Coffelt, 59 Ind. 310; Goodwine v. Morey, 111 Ind. 69; Holmes & Griggs Mfg. Co. v. Holmes & Wessell Co. et al., 53 Hun, 58.

Before considering this theory of the case, it may be well to advert briefly to certain features of the law of trover. The law authorizing a recovery in trover is succinctly stated as follows:

"A conversion is an unauthorized act which deprives a man of his property permanently or for an indefinite term. * * * Demand and refusal are evidence of conversion when the defendant is in such a condition that he can deliver the property if he will." Stock Yards Co. v. Mallory et al., 157 Ill. 563.

"A conversion is a positive, tortious act. Mere non-

feasance or neglect of some legal duty, will not suffice to support trover although it may constitute sufficient ground to maintain an action on the case." Tinker v. Morrill, 39 Vermont, 477; Sturgess v. Keith, 57 Ill. 451; Bolling v. Kirby, 90 Ala. 215.

"It has been repeatedly held that in order to maintain trover the plaintiff must have had possession of the goods claimed to have been converted or the right to immediate possession." Cooley on Torts, p. 445; Bailey v. Godfrey, 54 Ill. 510.

"The right which he (the plaintiff) complains he has been deprived of, must have been either a right actually in possession, or a right immediately to take possession. It is not enough that it be merely a right in action or a right to take possession at some future day." Cooley on Torts, p. 45.

"It is essential that the plaintiff at the time of the conversion should have not only the right of property in the chattel, but also the right to immediate possession." Chitty's Pleading, 149; Bailey v. Godfrey, 54 Ill. 509; Bertholf v. Quinlan, 68 Ill. 297.

"The right (to possession) must be immediate, absolute and unconditional, and not dependent on some act to be done by him." Frink v. Pratt & Co., 130 Ill. 331.

"There is a material distinction between a contract of sale and a mere contract to sell. In the former case the title passes to the vendee. In the latter case it remains in the vendor. There may be a contract of sale which passes the title, with the delivery postponed until payment is made. In such case the right of property passes to the vendee but the right of possession does not pass until payment is made. Trover will not lie until the right of possession is in the vendee." Bloxom v. Saunders, Barn. & Cress. 941, cited with other cases and followed in Owens v. Weedman, 82 Ill. 418.

If, then, nothing remained to be done after the invoice except to pay the land for the goods, and Prevo, on Monday, prior to sale of the goods to the Newlins, made a tender of payment, such as, under all the circumstances, would make a refusal of Raines & Co. to give possession of the goods a tortious act, trover will lie. For this would have been in law a wrongful conversion of Prevo's property. But trover will not lie unless there is a tortious con-

version. Mere non-feasance, or a mere refusal to fulfill a contract, does not warrant an action in trover. Sturges v. Keith, cited *supra*.

If, however, Prevo, prior to this tender on Monday, had so said and acted as to induce appellants to believe that if the goods were not delivered to him on Saturday he would not have them, but would sue on his contract, and appellants acted on that belief, then he can not recover in trover. He is estopped by his own acts and declarations. Under such conditions, a sale of the goods by Raines & Co. to other parties would not be a tortious act.

We have cited, *supra*, the testimony of five witnesses as to the declarations of Prevo, in substance, that he would not have the goods unless they were turned over to him on Saturday. When Stephen Newlin told Prevo, after these declarations on Saturday evening, and after he refused to allow the abstract to be examined, that the trade was off, the evidence shows no reply or protest on the part of Prevo. Under these circumstances, how can appellants be convicted of a tortious conversion of goods on Monday, which appellee, on Saturday, had said he would not receive unless delivered to him on Saturday? What reason had appellants to believe that appellee would change his mind, during the interval from Saturday to Monday? If appellee adhered to wha the said on Saturday, clearly appellants were not liable in trover for the conversion of the goods. If he did not adhere to what he said, appellants would not become liable because appellee changed his mind and wanted the goods.

As seen by citations of evidence *supra*, when Prevo and Raines & Co. parted on Saturday evening, the situation was this: Raines & Co. had possession of the goods, refusing to turn them over to Prevo until they had an opportunity of examining his title to the lands; while Prevo was insisting that if not turned over that evening he would not have the goods at all. If Raines & Co. acted upon Prevo's declarations, and sold the goods to the Newlins, we fail to see how this, in law, is a tortious conversion that will sustain

Newlin v. Prevo.

trover. Prevo is left to that remedy, namely, a suit upon the contract, which by his own declarations he elected to pursue, if possession of the goods was not given to him on Saturday.

There is another view of appellee's right to bring trover, based upon his tender of a deed on Monday, which is important to consider. By the contract appellee was required to pay the land for the goods. The contract is not that he should execute a deed for the land. It requires that he should pay the land, that is, that he should execute a deed that would then and there convey the land. In no other way could he pay the land for the goods. Raines & Co. were not obliged to deliver the goods unless such a deed was tendered. They were not obliged to accept a deed which did not actually convey the land, and in case of failure to convey title, to rely upon covenants of warranty for their protection. This being so, it follows that Raines & Co. were entitled to such an examination of the abstract presented, or of a reasonable opportunity to examine the records, as would enable them to see what appellee had, and whether his deed would convey the land. Appellee's claim to immediate possession is based upon the claim that he tendered payment for the goods, by tendering a deed which conveyed the land. The law in reference to tender is, that the party to whom a tender is made, must have sufficient opportunity to examine and determine what is tendered. It is not a valid tender of $1,000, to offer a package of bills, saying it contains $1,000, without allowing the party to whom the tender is made, to examine the bills and see if they are genuine, or if they are legal tender money, or to see if there is, in fact, $1,000 in the package. When specific articles of property are tendered they must be designated and set apart, so that the party to whom they are tendered may know exactly what is tendered. Am. & Eng. Ency., Vol. 25, p. 919; Benjamin on Sales, Sec. 715; Parsons on Contracts, 646; Root v. Bradley, 49 Mich. 27; Veazy v. Harmony, 7 Maine, 91.

By analogy, it follows that when a contract requires

that land is to be paid, title must be shown to the land in the party making the tender, or opportunity must be given to make an investigation to see if he has title. It is the very essence of a tender that the party to whom tender is made shall have the opportunity to know exactly what is tendered. Appellee bound himself to pay the land for the goods. Until he offered to comply with this condition he was not entitled to their possession. The land could not be tendered like a personal chattel. Its tender had to be by deed. Raines & Co. were not obliged to accept a deed immediately upon its being tendered, simply because it was tendered, and purported to convey title. They had a right to ascertain if it did convey title. To hold differently, would be to say, if appellee had no title to the land, by tendering a deed, he could compel the surrender of the goods and leave Raines & Co. to their remedy upon the covenants it contained. This was not the contract.

While appellee did not, by his contract, bind himself to furnish an abstract, he did by his promise to furnish one, made upon the request of Raines & Co., during the taking of the invoice, and by its production on Saturday evening, hold it out as his evidence of title. It is fair to presume that he expected Raines & Co. to act upon this evidence. The land being in another county, the records were not at hand for examination. The abstract, being in evidence, shows for itself that some considerable time would be required for a thorough examination. That sufficient time was not given on Saturday evening is evident. When appellee took the deed and went to have it acknowledged, no reason is shown why he did not leave the abstract for examination, nor does it appear that appellee made any statement that he would return with the deed acknowledged, and would then submit the abstract. The entire business was closed except the delivery of the deed and the surrender of the possession of the goods. At this stage of the proceeding, appellee withdrew what he had submitted as his evidence of title, and what he knew Raines & Co. were relying upon, and left the parties threatening that he

would sue them as testified to by different witnesses. If a demand for the goods and a refusal were in evidence, we think it would fall short of proving a tortious conversion of the goods by Raines & Co. The conduct of appellee was well calculated to arouse their suspicion that the abstract did not show title, and that he was in some way acting in bad faith.

Simpson Raines testifies that they had heard that the title to the land was imperfect. Appellee knew that they had been calling for his abstract, and that he had agreed to submit it. The evidence shows that they had offered to turn the goods over to him if he furnished proof of title, or deposited money to make the title good if it was imperfect. Under these circumstances, after taking the abstract out of the hands of Stephen Newlin and refusing to allow him to examine it, when he was then notified if he did so refuse that the trade was off, he is not in a position to charge Raines & Co. with committing a tort because they failed at that time to surrender possession of the goods.

On Monday a new or third deed, together with the abstract, appears to have been tendered to Ed Raines and also to Morton Raines. Mahlon Musgrave, a witness for appellee, testifies that it was not the deed acknowledged by Noel Musgrave (the first deed), nor the deed acknowledged by Crocker (the second deed).

In addition to this the abstract did not show title in appellee. He had in his possession a deed which purported to convey title to him. It does not appear in evidence that he showed this deed, or offered to show it, or stated that he had a deed. It is true that it was then on record. But the records were in Jackson county and this transaction took place in Crawford county. The Sabbath only had intervened between his refusal to allow the abstract to be examined, and its proffer for examination on Monday. Whether the brief examination of the abstract by Stephen Newlin on Saturday night disclosed that it did not show title in appellee does not appear. But the fact is fairly presented by the evidence, that between the parties, so far

as Raines & Co. knew, this abstract was held to show whatever title appellee had. As it showed no title in him, when produced by him to show his title, and as he had in his possession a deed which did purport to pass title to him, and according to his own testimony, does not know whether he showed it or not, we are not prepared to say that the tender on Monday put Raines & Co. in default. They had stated to appellee during the week before, that they were ready to turn over the goods whenever he showed his title to the land, or would put money in the bank to make the title good if it were not good. His failure to do either, upon a claim of tender, under all the circumstances in evidence, fails to prove a tortious act on the part of Raines & Co. in not surrendering the goods, and without such tortious act trover will not lie.

In so deciding it is not held that when a party agrees to literally pay land, that he must prove title to the land when he tenders a deed in order to make a valid tender. What is held is, that under the evidence in this case, the tender of the deed on Monday did not entitle appellee to such immediate possession of the goods as would make a refusal to surrender possession, such a tortious conversion by the party refusing, as would sustain an action in trover. A right of action for breach of contract, or for non-feasance, might thereby accrue, and yet trover not be maintainable for lack of a tortious conversion. If Raines & Co. had reasonable grounds for doubting the title to the land, and upon these grounds did so doubt, they might be liable for a breach of contract if their doubts were not well founded; but a refusal to complete a contract while such reasonable doubts existed would not be a tortious act.

There is also no evidence to show that the tender, if made, has been kept good. If a recovery in trover can be sustained, it must appear that appellee had placed the deed to the land beyond his control and placed it within the control of Raines & Co. It must have been in court to be delivered to Raines & Co. upon judgment in trover rendered against them. Appellee can not have his judg-

ment and the land too. For all that is disclosed in the record he may have disposed of the land and put it out of his power to convey it to Raines & Co. The facts, then, necessary to support a judgment in trover for appellee, upon a claim of right to immediate possession, he not having at any time been in possession, are not proven.

After considering the evidence, both upon the issues of actual possession and of a right to immediate possession, we are of the opinion that the action of trover can not be sustained. In so deciding we intimate no opinion as to the rights of appellee in any other form of action.

Having passed upon the case upon its merits, we do not deem it necessary to notice the exceptions of appellants to evidence excluded, or instructions given.

Judgment reversed and case remanded.