## Matthew H. McCarthy, Appellant, v. Henry Crawford et al., Appellees.

### Gen. No. 13,988.

1. RES JUDICATA—*when judgment not, of merits of controversy.* A judgment upon a demurrer sustained upon jurisdictional grounds is not conclusive of the merits of the controversy involved in a proceeding.

2.. RECEIVER'S CERTIFICATE—*nature and effect of.* A receiver's certificate is not a negotiable instrument and likewise it is not a *quasi*-negotiable instrument; it is not a substantive obligation, but is mere evidence of an indebtedness proven against an estate under an administrative order for the purpose of administering the estate, and entitles the holder to a distributive share when the amount thereof has been determined and distribution ordered.

3. RECEIVER'S CERTIFICATES—*when title to, does not pass.* The title to a receiver's certificate does not pass by delivery where such certificate has been issued pursuant to an order of court which required the registration of such certificate and provided that interest was to be paid only to the registered owner and that title thereto should be recognized only on condition of a surrender thereof and the making of a new registration.

4. RECEIVER'S CERTIFICATES—*when purchaser bound to investigate extent of broker's authority to sell.* One who undertakes to purchase trust property of a broker, such as a receiver's certificate, is bound to investigate and ascertain the power of such broker to make sale thereof; and this rule is not changed by the fact that the owner of such certificate may have signed the transfer and power of attorney on the back of the certificate, as no estoppel arises against such owner by reason of the execution thereof. Koch v. Willi, 63 Ill. 144, and Otis v. Gardner, 105 Ill. 436, distinguished.

Bill in chancery. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed May 19, 1908.

Statement by the Court. The appellant filed his bill in the court below against appellee Crawford, the Chicago Union Traction Company and James H. Eckels and Marshall E. Sampsell as receivers of said traction company appointed by the Federal Court. He

therein alleged that he was the equitable owner by purchase from brokers of a certain instrument in writing executed by the said receivers, called a certificate of indebtedness, No. 323, and officially certifying that the Chicago Union Traction Company was for value received indebted to Henry Crawford in the sum of $10,-815.24, with interest at 6 per cent. per annum, payable to the registered holder quarterly on the first day of October, January, April and July at the office of the treasurer of said company. "This certificate is one of the series bearing like interest made and executed by the undersigned as receivers of the Chicago Union Traction Company in conformity with an order of the United States Circuit Court, Northern District, Illinois, Northern Division, entered July 10, 1903, in suit of Guaranty Trust Company of New York v. Chicago Union Traction Company, reference to which order is hereby made."

It was further recited therein: "The claim upon which this certificate is issued has been audited and approved by the undersigned as receivers under said order as a valid obligation against the Union Traction Company. This certificate is registered and transferable only upon the books of the said company by ............................................................. or his attorney upon surrender of this certificate."

The order of court under which the certificate was issued and the petition of the judgment creditor on which the order was based are in the record. Such order makes such certificate a lien on all the assets in custody subject to the bonded indebtedness. The order provides in substance that any unsecured creditor of the traction company shall have the right to present his claim to the receivers, who should thereupon investigate and audit them, and if found correct, the receivers should issue and deliver to such creditor a certificate that the debt represented thereby had been duly proven as a valid debt against the estate of the Chicago Union Traction Company.

The bill of appellant made an exhibit of such certificate and alleged that Crawford, the payee thereof, delivered the same to Whipple & Co., who were brokers, at Chicago, "to effect a sale thereof on account of Crawford"; that when so placed in the hands of the brokers the printed form of assignment had been signed by Crawford, but the three blanks in such form for the name of the assignee, the attorney in fact to transfer and the date had not been filled.

Appellant thereupon alleged that on August 24, 1905, he had employed Whipple & Co. to purchase stocks for him and deposited with such brokers $9,100 to be applied to such purchase; that Whipple & Co. failed to purchase the stocks which complainant ordered them to buy, and thereupon offered to complainant the certificate of indebtedness delivered to them by Crawford, to be sold by them as brokers, in the place of the stocks which the complainant had directed them to buy; that complainant accepted said certificate, and by virtue of implied authority of Crawford he had filled the blanks. The conclusion of law is then averred that by means of the premises complainant became the equitable owner of such certificate as against Crawford, Whipple, the traction company and its receivers.

The bill alleged that on request the receivers had refused to accept the surrender of the certificate or to issue a new one to McCarthy. The prayer was that the court adjudge that he was the equitable owner of the certificate and entitled to a transfer and reissue; that the receivers be decreed to accept such surrender and to issue a new certificate to complainant, and that Crawford be enjoined from setting up any claim of right, title or interest in such certificate.

The answer of appellee Crawford admits the administration suit against the traction company, the issue to him by the receivers of certificate No. 323; that he employed Whipple & Co. as brokers to negotiate the sale of his certificate for cash at a designated price; the certificate itself was not delivered to such brokers

when such defendant employed them, or for a considerable period thereafter. It was so delivered on the request of the brokers in order that any intending purchasers could inspect it; the signature of defendant on the blank assignment on the back had been placed there long before the employment of said brokers.

At divers times prior to October 9, 1905, the brokers reported that they had been unable to obtain an offer for the purchase of the certificate on the terms fixed by defendant. On October 9, 1905, defendant demanded the immediate return of his certificate. The brokers informed him that it had been sent to New York to their correspondent. Defendant at once notified said brokers that such action was without authority and illegal and that such certificate must be immediately returned from New York and delivered to him. This was promised, but the certificate was not returned. On October 13, 1905, a petition in bankruptcy was filed against the brokers and with their consent they were on that day adjudicated bankrupts and a receiver was appointed. After such adjudication the defendant ascertained that the statements of the brokers that they had sent his certificate to New York were false and fraudulent, and that the following facts were true:

In August, 1905, McCarthy, the complainant, had employed the said brokers to purchase for his account 100 shares of Atchison, Topeka & Santa Fe Railroad stock. The brokers through their New York correspondent, purchased the stock on a margin of $500 paid them by appellant. Thereafter, on August 28, 1905, McCarthy paid over to the brokers cash sufficient to fully complete payment for the shares and directed the brokers to fully pay for such shares and deliver them to him. The brokers reported that they had used the money paid them for that purpose and had ordered the shares so fully paid for to be sent to Chicago. All such statements were false and fraudulent. None of the money received by them from McCarthy was in fact used to pay for the stock purchased

for him. The entire amount was misappropriated by the brokers and used to pay their own debts, and they were financially embarrassed and insolvent.

In answer to the repeated demands of McCarthy for the delivery of his stock the brokers responded that the shares had been paid for in full, but that there might be a few days' delay before they would be received in Chicago. About September 8, 1905, the brokers having misappropriated the money received from McCarthy, secretly and without authority delivered defendant's certificate of indebtedness to McCarthy, stating that he might hold it until the firm should deliver to him the 100 shares of Atchison stock which they reported they had bought for him. No consideration passed, at the time. It was a gratuitous and unlawful bailment of defendant's property by his brokers.

That McCarthy ever since has held the unlawful possession of such certificate and after the revocation of the brokers' agency on October 9, 1905, and the adjudication in bankruptcy, he filled out the blank transfer to himself and tried to surrender the same and take out a new certificate to himself as registered holder.

At the same time appellee Crawford filed his cross-bill setting up the same matters which are included in his answer.

He therein prayed that the court would decree that he was the lawful owner of the certificate and entitled to the provision thereof that the present assignment therein to McCarthy was placed there without consideration or authority and should be cancelled, and the plaintiff should be enjoined from setting up any title or right of possession and the certificate be surrendered to its true owner.

Appellant's answer to such cross-bill recites that possession of the certificate was obtained from the brokers under circumstances radically variant from the averments of his original bill.

The answer expressly avers that the certificate "was sold to cross-defendant in the manner hereinafter more particularly set forth by the agents of cross-complainant, in whom he had vested such power of disposition over said certificate as to bind cross-complainant by the sale of said certificate by said agents of this defendant."

The answer of appellant to the cross-bill further alleged the employment of the brokers by McCarthy to purchase 100 shares of Atchison stock and his payment to them of the full price of all such shares, but in response to his pressure to deliver such stock the brokers replied that although such stock had been paid for there was some delay before the shares would reach Chicago. It admits that on "September 11, 1905, the brokers delivered said certificate to this cross-defendant, stating that he might hold the same until brokers should deliver his 100 shares of Atchison stock."

It admits that he has had possession of certificate No. 323 "ever since September 11, 1905, when he acquired it." He alleges that he lawfully filled in the blanks on the prescribed assignment over the signature of Crawford because he purchased the certificate from the brokers for a valuable consideration.

It is then averred that on August 25, 1905, appellant paid such brokers $9,116.30, to be used by them in the purchase of Atchison stock. They failed to buy, and thereupon they offered in place of the stock certificate No. 323 for ninety-five per cent. of its face value, which McCarthy accepted. Thereupon appellant paid for said certificate by the application to said purchase price of $9,116.30, which the brokers had received from McCarthy as bailees, and the balance of said agreed purchase price amounting to $1,158.19, the said McCarthy agreed to pay to the brokers.

On final hearing the original bill of appellant was dismissed for want of equity, and the court rendered a decree on the cross-bill of Crawford, finding that he

was the lawful owner of certificate No. 323, subject to a lien of $875 for advances by the brokers. That the assignment to appellant on the back of the certificate was null and void because he had obtained the same from Crawford's brokers without paying any present consideration therefor, and not in the usual course of business.

JULE F. BROWER and SAMUEL B. KING, for appellant.

JULIUS A. JOHNSON, for appellee; CHARLES H. ALDRICH, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

The controversy here involved is over the ownership of the certificate of indebtedness.

Appellant insists that the decree of the Circuit Court be reversed and appellant be granted the relief prayed in his original bill, upon the following grounds, stated in his brief:

First. The question of the merits of the case was presented to the United States Circuit Court by the seventh ground of demurrer to the ancilliary bill filed in that court, which demurrer was sustained in its entirety and a decree for costs was rendered therein against appellee, the complainant in that suit.

Second. The instrument in question was *quasi*-negotiable in its character, and Crawford is estopped from disaffirming the act of the brokers whom he had constituted his general agents for the sale thereof, by the fact that Crawford had clothed his special agents, the brokers, with the indicia of ownership and with the unqualified power of disposition of the certificate; and Crawford is further estopped by the fact that he had recited, over his signature, that he, "for value received, have bargained and sold and by these presents do bargain, sell and assign * * * the within certificate of indebtedness."

McCarthy v. Crawford.

Third. That Crawford had made a valid and binding sale of all this right in or to said certificate on October 11, 1905, and his only right with respect to said certificate is his right to recover of the brokers the amount of money he had agreed to accept therefor.

Fourth. The court erred in excluding the evidence of the fact that, according to the usual course of business between the brokers and their bank, the check tendered by the brokers in payment of the certificate would have been paid by the bank upon presentation.

Fifth. Since the cancellation of a past indebtedness or obligation is all the consideration a *bona fide* purchaser need show, the theory of the decree is wrong.

Sixth. Since the only basis for the finding of the decree that appellant did not acquire the certificate in the usual course of business, is the fact that he paid no present consideration for it, that theory of the decree must fail for the reason stated in the fifth ground above.

We do not think the proceedings in the United States Circuit Court shown by the record are a bar to the prosecution of this suit. The special demurrer filed in that court presented the ground that no diversity of citizenship between the parties was averred in that bill, and other jurisdictional grounds, and that therefore the court was without jurisdiction as a federal court to hear and determine the controversy presented in the bill. The conclusion is obvious from the record that the demurrer was sustained on jurisdictional grounds, and not on the ground that the bill did not show any equity in favor of the complainant against the defendant. This is shown conclusively by the opinion of the United States Circuit Court of Appeals in that case, appearing in the record before us. A decree for costs would logically follow when the complainant elected to stand by his bill, and this should not, in our opinion, be held to be a bar in this

case to relief on the merits on the cross-bill of appellee.

In form and substance the bill of appellant seeks to obtain a specific performance of an alleged lawful sale of the certificate of indebtedness made by Whipple & Co. as the agents of appellee who was the registered owner of the indebtedness or claim evidenced by the certificate. The theory of relief presented is based upon the ownership of Crawford, his employment of Whipple & Co. as brokers and a lawful sale made by them to appellant. And, in line with that theory, it is here contended that the sale by the brokers was not in violation, but in fulfillment of the purpose for which the certificate was placed in their hands; and that the wrong of the brokers consists, not in having sold the certificate to appellant, but in their failure to account to Crawford for the purchase price thereof.

Appellant's pleadings admit that Crawford was the registered and absolute owner of the certificate at the time of the alleged sale thereof, and that as such owner he employed the brokers to negotiate a sale for his account. And appellant's pleadings set up that he obtained his title through a lawful sale by Crawford's agents, who had possession of the certificate as bailees and fiduciaries, without any color of ownership or right of property therein.

The record thus presents the question whether the pleaded and proven acts of the brokers in respect of the certificate were within the scope of their agency, and were legally sufficient to transfer ownership of the indebtedness evidenced by the certificate from Crawford to McCarthy.

We deem it important at this point to consider what this certificate is,—what is its legal effect and purpose.

In appellant's briefs, and in oral argument, it is contended and spoken of as a security of a *quasi*-negotiable character, and that McCarthy's alleged purchase of it should be considered upon the same basis

McCarthy v. Crawford.

as if he had acquired in good faith before maturity and for value an instrument, the title to which could be passed by mere delivery.

This view of the instrument is not sound. The order of court appearing in the record under and in pursuance of which the certificate was issued provides that, with the consent of all parties, the receivers of the Chicago Union Traction Company audit claims of creditors who may present them, and if found to be a just and valid debt of said company, they shall issue for such claim one or more certificates as such receivers, declaring that the claim has been audited and approved by the receivers as a valid debt against the estate of said company for the amount stated therein and interest; and that the lawful holder of each of such certificates is entitled to share in all payments and distribution of assets of said company, and shall stand on a parity with the complainant in said suit. The court's order makes the claim represented by the certificate a charge on the corporate assets subject to the bonded debt.

When a certificate is issued under this order it represents a fully-matured liability and entitles the holder thereof to a standing in that receivership case. It is not an unconditional promise of anyone to pay a specified sum of money. No suit could be brought thereon against anyone for a money recovery. It is not a substantive obligation, but is mere evidence of an indebtedness proven against an estate under an administrative order for the purpose of administering the estate, and entitles the holder to a distributive share when the amount thereof has been determined and distribution ordered.

The office and effect of such a certificate is stated in Richmond v. Irons, 121 U. S. 52, as follows: "If he proves such a claim, then he does prove himself to be a creditor, and as such is entitled to come in under the decree, and has a right to be considered

as a party complainant from the beginning by relation to the time of filing the bill."

This, we think, is the sole office or effect of the certificate; and it is neither negotiable nor *quasi*-negotiable. Turner et al. v. P. & S. R. R. Co., 95 Ill. 134.

When it is further considered that the order of court required the certificate to be registered by the court officials, and that interest was to be paid only to the registered owner, and that the title of any alleged assignee would not be recognized except on condition of a surrender of the old certificate and taking out a new registration, the theory that title thereto could be passed by mere delivery finds little support in the record.

By the allegations of the original bill it appears that Crawford placed the certificate in the hands of the brokers for sale, and at the same time signed the assignment and power of attorney on the back of the certificate leaving the blank for the name of the transferee and of the attorney in fact and the date not filled; that the same brokers had been employed by McCarthy to purchase certain stocks for him, and that on August 24, 1905, McCarthy had paid to them nine thousand one hundred dollars to be applied by the brokers to the purchase of such stocks. The brokers had failed to purchase the stocks as ordered, but offered to McCarthy the certificate in question in place of the stocks, and that McCarthy accepted the certificate and filled in the blanks in the assignment and power of attorney.

Crawford's answer and cross-bill averred that the brokers had misappropriated all the moneys which they had received from McCarthy to buy stock for him and did not make any purchase for him, and being pressed by McCarthy to deliver the stock, they falsely reported to him that the shares had been purchased but there was some delay attending the transfer thereof; and that on or about September 8, 1905,

McCarthy v. Crawford.

the brokers fraudulently delivered the certificate then in their custody as brokers to McCarthy to hold in pledge until they should deliver the stock which he had ordered purchased. These averments are admitted by McCarthy in his answer to the cross-bill, and the facts are proved by the testimony of McCarthy and Nugent, the brokers' cashier. Nugent also testified that the certificate did not come into the possession of the brokers until after McCarthy paid the money to the brokers for the purchase of the stock, and it had all been used and paid out by the brokers, who were then insolvent and in a failing condition, for their own use.

McCarthy states in his testimony that at the time the certificate was delivered to him he did not agree to buy it, or pay any money for it. He simply signed a receipt for it, acknowledging the receipt of the certificate as security for the delivery of the stock. After holding the certificate in this way four or five days, McCarthy testifies, he asked Whipple if it was for sale, and Whipple replied it was for sale. McCarthy questioned Whipple as to the ownership, and a price was agreed upon for the certificate, and McCarthy purchased it from Whipple by applying his credit on Whipple & Co.'s books of $9,116.30 on the purchase price of the certificate, and a memorandum was made to that effect, dated October 11, 1905. The price agreed upon for the certificate was ninety-five cents on the dollar for the face value of the certificate amounting to $10,274.49. The balance of the purchase price, $1,158.19, was never paid.

The certificate on its face notified appellant, McCarthy, that the indebtedness which it evidenced was due to Crawford, and pointed him to the order of court under and in pursuance of which it was issued; and that the certificate itself was transferable only on the books of the company. This was notice that at the time he received the certificate and at the time of his alleged purchase Crawford was its owner, and that

Whipple & Co. were not its owners. It put McCarthy on inquiry as to Whipple & Co.'s authority to deal with the paper in their hands. It pointed out the person of whom such inquiry should be made. The certificate, and the well known fact to him that Whipple & Co. were brokers were notice to appellant of the fiduciary character of the brokers, and that the certificate was trust property in their hands and that they could not deal with it for their own personal benefit. In Meacham on Agency, sec. 994, the learned author thus states the doctrine on this subject:

"Nor does it make any difference that the pledgee was ignorant of the extent of the factor's authority, or supposed him to be the real owner of the goods. As in the case of other agents, the person dealing with the factor must ascertain the extent of his authority, and omits to do so at his peril.

This rule operates to prevent a transfer or indorsement of the bill of lading by way of security for the factor's debt, as well as the actual delivery of the goods themselves in pledge. Nor can the power arise from usage."

Chancellor Kent held in the early case of Rodrigues v. Hefferman, 5 Johnson's Ch., 417-429: "It is an old settled and understood rule, that a factor cannot pledge, even though the creditor have no notice of his character as factor. In such a case every creditor trusts and deals at his peril."

This doctrine was adopted by the Supreme Court in Potter v. Dennison, 5 Gilm. 590-598, in the following language: "And yet the principal, whenever his factor has bartered or otherwise disposed of the goods in a manner not within the ordinary and accustomed modes of transacting the like business, may follow and reclaim the property; and in such a case, it is wholly immaterial whether the person dealing with the factor, knew him to be such or not." Citing Story's Agency, secs. 224, 225; Dunlap's Paley's Agency, 219. To the same effect are many later cases in this state.

Berry v. Allen, 59 Ill. App. 149; Bertholf v. Quinlan, 68 Ill. 297; Gray v. Agnew, 95 *id.* 319; First National Bank v. Schween, 127 *id.* 573; Clemmer v. Drovers Nat. Bank, 157 *id.* 206.

In the Federal Courts the absolute disability of brokers to pledge or otherwise transfer property contrary to the usage of trade, and for their own benefit, is declared by many decisions.  In Warner v. Martin, 11 How. 209, it was held that a factor has no power to transfer the title of his principal to goods consigned to him for sale, in payment of a precedent debt due from himself.  And a creditor who receives the goods under such an arrangement, as well as his vendee, though acting in good faith, and in ignorance of the fact that the goods did not belong to the factor, acquires no title as against the principal.  The case of Union Stock Yards Bank v. Gillespie, 137 U. S. 411, is directly in point.

The evidence is undisputed and abundantly warrants the inference that Whipple & Co. undertook to pledge the certificate to appellant as security for their debt to him; and they afterwards attempted to sell it to appellant for the same consideration in part. These transactions were fraudulent and void as to Crawford and did not pass Crawford's title to appellant.

In our opinion the fact that Crawford signed the transfer and power of attorney on the back of the certificate does not estop him to deny the facts recited therein.  Appellant is not entitled to protection, upon the evidence in the record, against the fraud of the brokers, upon the principle that where one of two innocent persons must suffer for the fraud of a third, he who made it possible for the loss to occur must bear the loss.  McCarthy was not an innocent person in the transaction under consideration.  As we have seen, he was put upon inquiry, and is chargeable with all the knowledge which such inquiry would have brought to him.  He had no right to infer from the

assignment in blank that Whipple & Co. were the owners of the certificate, or had the right to pledge or otherwise dispose of it for their own use.

Appellant relies with apparent confidence upon Koch v. Willi, 63 Ill. 144, and Otis, Admr., v. Gardner et al., 105 Ill. 436. We think these cases differ· so materially in their controlling facts, and the relations of the parties to each other, from the case at bar, that they required the application of different principles from those which should be applied to the facts disclosed in this record.

We think the decree of the lower court is right and must be affirmed.

*Affirmed.*